Sandra K. KILPATRICK and William Kilpatrick, Plaintiffs–Appellants,

v.

James W. BRYANT, M.D., Defendant–Appellee.

No. 02S01–9107–CV–00027.

Supreme Court of Tennessee, at Jackson.

Dec. 22, 1993.

Al H. Thomas, Thomas & Thomas, P.C., Memphis, for plaintiffs-appellants.

Gary K. Smith, Archie Sanders, III, William D. Domico, Shuttleworth, Smith, McNabb & Williams, Memphis, for defendant-appellee.

## OPINION

DROWOTA, Justice.

In this medical malpractice case, the Plaintiffs, Sandra and William Kilpatrick, have appealed from a decision of the Court of Appeals affirming the grant of summary judgment in favor of Dr. James W. Bryant, Defendant–Appellee. We granted the Plaintiffs' Rule 11 application to decide whether a cause of action for "loss of chance" is cognizable in Tennessee. For the reasons discussed below, we decline to recognize such a cause of action and hold that there can be no liability in a medical malpractice case for negligent diagnosis or treatment that decreases a patient's chances of avoiding death or other adverse medical condition where the death or adverse medical condition would probably have occurred anyway.

I.

The Plaintiffs alleged in their complaint that on May 18, 1987, Dr. Bryant examined Sandra Kilpatrick at which time a lump was detected in her right breast. Dr. Bryant ordered a mammogram which was performed on May 21, 1987, by Dr. Thipavan Boone. Dr. Boone interpreted the xeromammography films and stated that no definite outline of a mass or indication of malignancy was seen. Mrs. Kilpatrick avers that Dr. Bryant informed her that the mammogram results were negative. Approximately four months later, in September, Mrs. Kilpatrick was examined by another physician who did a biopsy. Cancer was detected and Mrs. Kilpatrick underwent a right radical mastectomy a month later for removal of the cancer of the right breast.

The Plaintiffs sued Dr. Bryant and the radiologists who performed the mammogram, although the radiologists were later voluntarily dismissed from the case. The Plaintiffs claim that Dr. Bryant was negligent in the treatment of Mrs. Kilpatrick in relying

upon the findings of the radiologists and in failing to inform her of the need to seek follow-up care. Specifically, their complaint alleges that

> [t]he Defendant, James W. Bryant, was negligent and careless in the treatment of the Plaintiff, Sandra K. Kilpatrick, inasmuch as he should not have relied totally upon the findings of the radiologists, and that further he failed to even suggest the need for follow-up examination or further consultation; that likewise, as a direct and proximate result of his negligence, Plaintiff, Sandra K. Kilpatrick, suffered more serious complications and a general worsening of her cancerous condition as a result of her cancer going undetected for approximately four months.

It is further claimed by the Plaintiffs that Dr. Bryant's negligence required Mrs. Kilpatrick to seek additional medical treatment, suffer loss of earning capacity and enjoyment of life, experience pain and disablement, and has made her medical condition worse than it would otherwise be. Mr. Kilpatrick seeks recovery for loss of consortium.

In his answer, Dr. Bryant denied that his conduct fell below the required standard of care. He also denied that the physical condition of Mrs. Kilpatrick resulted from any violation of the standard of care by him. Dr. Bryant filed a motion for summary judgment on the basis that the Plaintiffs failed to present evidence establishing the elements of a medical malpractice action as set forth in T.C.A. § 29–26–115. In opposition to Dr. Bryant's motion for summary judgment, the Plaintiffs filed the affidavit of Dr. James A. Schell, which stated that he was familiar with the recognized standard of care for physicians in Memphis and the care and treatment of patients with suspected breast cancer. He further stated that Dr. Bryant failed to meet the accepted standard of medical care. Dr. Schell's affidavit addressed only the issues of the standard of care and its alleged violation by Dr. Bryant. The Plaintiffs also filed the affidavit of Dr. Lee R. Morisy, Mrs. Kilpatrick's subsequent treating physician. Dr. Morisy stated that he operated on Mrs. Kilpatrick and performed the right radical mastectomy. The only proof concerning causa-

tion in this case is found in the affidavit of Dr. Morisy. He states that

> I am of the medical opinion, based on a reasonable degree of medical certainty, that the delay of four (4) months in the operation performed increased the likelihood of Mrs. Kilpatrick suffering irreparable damage.

The trial court granted Dr. Bryant's motion for summary judgment and dismissed the case. The Court of Appeals affirmed on the basis that the physicians' affidavits supplied by the Plaintiffs in opposition to the motion for summary judgment did not establish that Mrs. Kilpatrick had suffered injuries that would not otherwise have occurred but for Dr. Bryant's negligence. The intermediate court explained that

> [i]n the case at bar, Plaintiffs' proof is from the affidavit of Dr. Morisy which states that the 'delay of four (4) months ... increased the likelihood of Mrs. Kilpatrick suffering irreparable damage.' This proof deals with future effect resulting from the action of the physician. The affidavit does not state the delay of four months caused Mrs. Kilpatrick to suffer irreparable damage. It merely states that there is a likelihood or probability that the delay would cause irreparable damage.

Accordingly, the Court of Appeals affirmed the dismissal of the case.

## II.

■ A proper resolution of the present controversy requires that it be viewed in the context of certain well-established principles of tort law. Because this case centers on medical malpractice, the starting point is T.C.A. § 29–26–115(a). According to this statute, the plaintiff in a medical malpractice case has the burden of proving the following:

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and

reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

This statute codifies the common law elements of negligence—duty, breach of duty, causation, proximate cause, and damages. *Cardwell v. Bechtol,* 724 S.W.2d 739, 753 (Tenn.1987); *Dolan v. Cunningham,* 648 S.W.2d 652, 654 (Tenn.App.1982). No claim for negligence can succeed in the absence of any one of these elements. *Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn.1993).

■ Cases involving the "loss of chance" theory of recovery necessarily focus on the elements of causation and proximate cause. *See, e.g., Kramer v. Lewisville Memorial Hosp.,* 858 S.W.2d 397 (Tex.1993). Causation, or cause in fact, means that the injury or harm would not have occurred "but for" the defendant's negligent conduct. *See Caldwell v. Ford Motor Co.,* 619 S.W.2d 534, 543 (Tenn.App.1981); *Wyatt v. Winnebago Industries, Inc.,* 566 S.W.2d 276, 280 (Tenn. App.1977). Once it is established that the defendant's negligent conduct was, in point of fact, the actual cause of the plaintiff's injury or harm, the focus then becomes whether the policy of the law will extend responsibility for that negligent conduct to the consequences that have occurred. As this Court stated in *Doe v. Linder Const. Co., Inc.,* 845 S.W.2d 173 (Tenn.1992), "legal responsibility must be limited to those causes which are so closely connected with the result and are of such significance that the law is justified in imposing liability. Some boundary must be set...." *Doe,* 845 S.W.2d at 181 (quoting Prosser and Keeton, *The Law of Torts* 264 (5th ed. 1984)). Fixing this boundary of liability is the purpose underlying the element of proximate cause. Proximate cause

is merely the limitation which the courts have placed upon the actor's responsibility for the consequences of the actor's con-

duct.... [T]he consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. Any attempt to impose responsibility upon such a basis would result in infinite liability.... [1]

*Id.*

■ Causation and proximate cause are distinct elements of negligence, and both must be proven by the plaintiff by a preponderance of the evidence. *Bradshaw,* 854 S.W.2d at 869; *McClenahan v. Cooley,* 806 S.W.2d 767, 774 (Tenn.1991); *Smith v. Gore,* 728 S.W.2d 738, 749 (Tenn.1987). "Causation (or cause in fact) is a very different concept from that of proximate cause. Causation refers to the cause and effect relationship between the tortious conduct and the injury. The doctrine of proximate cause encompasses the whole panoply of rules that may deny liability for otherwise actionable causes of harm." King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Injuries and Future Consequences,* 90 Yale L.J. 1353, 1355 n. 7 (1981). Thus, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established. *McKellips v. Saint Francis Hosp.,* 741 P.2d 467 (Okl.1987). "Cause in fact, on the other hand, deals with the 'but for' consequences of an act. 'The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct.'" *Id.* at 470 (quoting Prosser and Keeton, *The Law of Torts* 266 (5th ed. 1984)).

■ The critical issue in this appeal, as in all loss of chance cases, is whether the Plaintiffs have failed, as a matter of law, to establish the existence of causation, i.e., that the purported medical malpractice actually caused the harm complained of. *McKellips,* 741 P.2d at 470–71. This question dominates because the rule requiring causation be proven by a preponderance of the evidence dictates that Plaintiffs demonstrate that the

---

**1.** In *McClenahan v. Cooley,* 806 S.W.2d 767 (Tenn.1991), we stated that the three-pronged test for proximate cause is: (1) the defendant's conduct must have been a substantial factor in bringing about the harm complained of; and (2) there is no rule or policy that should relieve the

wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence. *Id.* at 775.

negligence *more likely than not* caused the injury. *Lindsey v. Miami Dev. Corp.,* 689 S.W.2d 856, 861 (Tenn.1985) ("[p]laintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result."). To be sure, the mere occurrence of an injury does not prove negligence, and an admittedly negligent act does not necessarily entail liability. *Doe,* 845 S.W.2d at 181. Even when it is shown that the defendant breached a duty of care owed to the plaintiff, the plaintiff must still establish the requisite causal connection between the defendant's conduct and the plaintiff's injury. *Id.* ("Proof of negligence without proof of causation is nothing").

### III.

■■■■ In the context of medical malpractice, the "loss of chance" doctrine, sometimes called the "increased risk of harm" doctrine, permits a recovery where the delay in proper diagnosis or treatment of a medical condition results in the patient being deprived of a less than even chance of surviving or recovering. *See Loss of Chance in Medical Malpractice Cases,* 20 Mem.St.U.L.Rev. 81, 91 (1989). Stated another way, the patient has a cause of action for the increase in the risk of harm or loss of a better chance of surviving, recovering, or a more favorable result. 90 Yale L.J. at 1365. "Traditionally, the concept of 'loss of chance' has been employed in the situation where the possibility of a more favorable outcome has been denied by the defendant's negligence, but where the plaintiff was already in peril of injury because of an underlying condition at the time." Price, *Causation—The Lord's Lost Chance?,* 38 Int'l and Comp.L.Q. 735, 735–36 (Oct. 1989); *see also Manning v. Twin Falls Clinic and Hosp.,* 122 Idaho 47, 51 n. 2, 830 P.2d 1185, 1189 n. 2 (1992) (increased risk of harm refers to whether the negligence of the plaintiff has increased the plaintiff's risk of harm while loss of chance refers to whether that negligence deprived the plaintiff of a chance or opportunity for a recovery, and cases analyzing the terms use them interchangeably). The doctrine applies to those situations in which the plaintiff suffers from a preexisting medical condition, and this condition is such that he has less than a 51 percent chance of recovering even with optimal medical care. The negligent physician is thus subject to liability to the extent that he tortiously contributes to the harm by permitting the preexisting condition to progress, or by accelerating its harmful effects. 90 Yale L.J. at 1360.

The loss of chance doctrine has its genesis in *Hicks v. United States,* 368 F.2d 626 (4th Cir.1966). The Fourth Circuit in *Hicks* held that a physician breached the standard of care by failing to diagnose an intestinal obstruction from which the patient died. The proof demonstrated that it was more likely than not that the patient would have survived had she not been negligently diagnosed by the defendant. Despite this proof, the court, in dicta, stated:

> When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization. If there is any substantial possibility of survival and the defendant has destroyed it, he is answerable.

*Hicks,* 368 F.2d at 632. Primarily from this quoted language, several courts, as explained below, have fashioned the loss of chance doctrine which the Plaintiffs in the instant case ask this Court to adopt. We note, however, that the Fourth Circuit has recently reviewed its *Hicks* decision in *Hurley v. United States,* 923 F.2d 1091 (4th Cir.1991), in which it referred to the quoted language above as "dicta which [has] precipitated misunderstanding throughout the courts." *Id.* at 1093. The court in *Hurley* held that *Hicks* was not intended to change traditional notions of causation in medical malpractice cases, and rejected the loss of chance doctrine as a viable cause of action—thereby negating the widely held view of *Hicks. Id.* at 1095, 1099. The court reinstated the traditional standard for proving causation which requires a showing of probability of survival or recovery of greater than 50 percent absent the defendant's negligence.

Prior to the Fourth Circuit's clarification of *Hicks* in the *Hurley* decision, several jurisdictions seized upon the language quoted above to relax the traditional standard of causation, i.e., more likely than not, and have held that the destruction of a lost opportunity for survival or recovery will satisfy the standard for causation even if the plaintiff's chance of avoiding the ultimate harm was improbable, i.e., less than 50 percent. Hence, the key inquiry presented by these types of cases is whether there can be "liability for negligent treatment that decreases a patient's chance of avoiding death or other medical conditions [because] the adverse result probably would have occurred anyway." *Kramer,* 858 S.W.2d at 398. There are now many cases coming down on both sides of this question. *See* Annotation, *Medical Malpractice: "Loss of Chance" Causality,* 54 A.L.R.4th 10 (1987). The jurisdictions that have considered the issue can be placed into one of three general categories: (1) pure loss of chance, (2) loss of a substantial chance, and (3) the traditional approach to causation, sometimes referred to as the all-or-nothing approach, *see* 90 Yale L.J. at 1365.

### (1).

As stated earlier, in many medical negligence cases, the patient's medical condition is such that he has less than a 51 percent chance of survival or recovery even with optimal medical care. The traditional but for test of cause in fact prevents recovery under such circumstances because the patient's condition would more likely than not be the same even if the defendant had not been negligent. The Texas Supreme Court, in a thoughtful opinion authored by Chief Justice Phillips, recently explained the problem as follows:

> [Where] preexisting illnesses or injuries have made a patient's chance of avoiding the ultimate harm improbable even before the allegedly negligent conduct occurs— i.e., the patient would die or suffer impairment anyway—the application of these traditional causation principles will totally bar recovery, even if such negligence has deprived the patient of a *chance* of avoiding the harm.

*Kramer,* 858 S.W.2d at 400 (emphasis in original). Several courts have viewed this result as unduly harsh and, consequently, have relaxed the traditional causation standard to allow recovery where the plaintiff proves the physician's conduct deprived him of a possibility of a better medical result. Ten jurisdictions have adopted this pure form of loss of chance (or at least have not undertaken to limit the cause of action with "substantial chance" language). *Voegeli v. Lewis,* 568 F.2d 89 (8th Cir.1977) (applying South Dakota law); *Thompson v. Sun City Comm. Hosp.,* 141 Ariz. 597, 688 P.2d 605 (1984); *Richmond County Hosp. Auth. v. Dickerson,* 182 Ga.App. 601, 356 S.E.2d 548 (1987); *DeBurkarte v. Louvar,* 393 N.W.2d 131 (Iowa 1986); *Aasheim v. Humberger,* 215 Mont. 127, 695 P.2d 824 (1985); *Scafidi v. Seiler,* 119 N.J. 93, 574 A.2d 398 (1990); *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978); *Herskovits v. Group Health Co-op.,* 99 Wash.2d 609, 664 P.2d 474 (1983); *Thornton v. CAMC,* 172 W.Va. 360, 305 S.E.2d 316 (1983); *Ehlinger v. Sipes,* 155 Wis.2d 1, 454 N.W.2d 754 (1990). Thus, for example, under the pure form of loss of chance, a patient who faced a 95 percent chance of dying even with appropriate medical care would still have a cause of action against the physician who negligently deprived him of the 5 percent chance of survival.

### (2).

In addition to the ten jurisdictions recognizing pure loss of chance as a viable theory of recovery, six more permit the cause of action but add the requirement that the negligence be shown to have reduced a "substantial chance" or "substantial possibility" or "appreciable chance" of a favorable end result given appropriate medical treatment. *Jeanes v. Milner,* 428 F.2d 598 (8th Cir.1970) (applying Arkansas law); *Roberson v. Counselman,* 235 Kan. 1006, 686 P.2d 149 (1984); *Falcon v. Memorial Hosp.,* 436 Mich. 443, 462 N.W.2d 44 (1990); *McKellips v. Saint Francis Hosp.,* 741 P.2d 467 (Okla.1987); *Perez v. Las Vegas Medical Center,* 107 Nev. 1, 805 P.2d 589 (1991); *Kallenberg v. Beth Israel Hosp.,* 45 A.D.2d 177, 357 N.Y.S.2d 508 (1974). This approach is apparently de-

signed to prohibit claims where the plaintiff does not have a realistic basis for a favorable outcome even absent the defendant's negligence. At the same time, "a health care provider will not be able to avoid responsibility for negligent conduct simply by saying that the patient would have died anyway, when that patient had a reasonable chance to live." *Perez,* 805 P.2d at 593.

Courts allowing recovery for loss of chance view the compensable injury as the impaired or destroyed *opportunity* for a more favorable medical result, not the unfavorable result itself. *See, e.g., Falcon v. Memorial Hosp.,* 436 Mich. 443, 462 N.W.2d 44, 52 (1990). According to these courts, the interest which the law seeks to protect is the impaired or destroyed chance. *Thompson v. Sun City Comm. Hosp.,* 141 Ariz. 597, 608, 688 P.2d 605, 616 (1984). When the injury itself is defined as the impaired or destroyed opportunity, the plaintiff can recover for that impaired or destroyed opportunity even though the chances of an ultimate, favorable medical result are 50 percent or less. *Id.* 462 N.W.2d at 53–54. The reason is that the causational link which the plaintiff must establish is between the defendant's negligence and the impaired or destroyed opportunity, not between the negligence and the unfavorable medical result. Plaintiff, therefore, must prove that it is more probable than not that the defendant's negligence was the cause in fact of the reduced opportunity for avoiding the ultimate, unfavorable outcome. *Id.* at 53.

### (3).

Although several jurisdictions have decided to permit the cause of action for loss of chance, many others have either rejected loss of chance explicitly or have at least refused to allow recovery under the typical loss of chance scenario. *See, e.g., Alfonso v. Lund,* 783 F.2d 958 (10th Cir.1986); *Gooding v. University Hosp.,* 445 So.2d 1015 (Fla.1984); *Manning v. Twin Falls Clinic and Hosp.,* 122 Idaho 47, 830 P.2d 1185 (1992); *Watson v. Medical Emergency Serv.,* 532 N.E.2d 1191 (Ind.App.1989); *Walden v. Jones,* 439 S.W.2d 571 (Ky.1968); *Fennell v. Southern Maryland Hosp.,* 320 Md. 776, 580 A.2d 206 (1990); *Clayton v. Thompson,* 475 So.2d 439

(Miss.1985) and *Ladner v. Campbell,* 515 So.2d 882 (Miss.1987); *Pillsbury–Flood v. Portsmouth Hosp.,* 128 N.H. 299, 512 A.2d 1126 (1986); *Cooper v. Sisters of Charity,* 27 Ohio St.2d 242, 272 N.E.2d 97 (1971); *Sherer v. James,* 290 S.C. 404, 351 S.E.2d 148 (1986); *Kramer v. Lewisville Memorial Hosp.,* 858 S.W.2d 397 (Tex.1993); *Blondel v. Hays,* 241 Va. 467, 403 S.E.2d 340 (1991); *see generally, Grody v. Tulin,* 170 Conn. 443, 365 A.2d 1076 (1976) (defendant physicians were entitled to judgment as a matter of law where jury was called upon to speculate whether an earlier diagnosis and treatment of the patient's cancer might have prolonged her life); *Cornfeldt v. Tongen,* 295 N.W.2d 638 (Minn.1980) (judgment notwithstanding the verdict should have been granted to the defendant physician, despite expert proof that surgery increased the risk of death to the patient with underlying liver disease, because the patient failed to show that it was more probable than not that but for the operation she would have recovered); *Horn v. National Hosp. Ass'n,* 169 Or. 654, 131 P.2d 455 (1944) (dismissal upheld where the delay in diagnosis was not shown to have resulted in harm that would not have occurred even if there had been no delay in diagnosis). Many of these courts raise the objection that "recognition of mere chance as a recoverable item of loss fundamentally contradicts the essential notion of causation." *Falcon,* 462 N.W.2d at 58 (Riley, C.J., dissenting). The jurisdictions adhering to this view do so because plaintiffs ought to be required to show that the negligence more likely than not was the cause in fact of the unfavorable medical result. In other words, recovery is disallowed unless it can be shown that the plaintiff would not have suffered the physical harm but for the defendant's negligence, i.e., that it is more probable than not (greater than 50 percent) that but for the negligence of the defendant the plaintiff would have recovered or survived. *Id.* at 47.

### IV.

Returning to the case at bar, we must decide whether Plaintiffs have proven that the Defendant's negligence caused "injuries which would not otherwise have occurred." T.C.A. § 29–26–115(a)(3). As the

Sixth Circuit recently noted in *Boburka v. Adcock*, 979 F.2d 424 (6th Cir.1992), a plaintiff in a medical malpractice case in Tennessee must "prove that it is more likely than not that the defendant's negligence caused plaintiff to suffer injuries which would have not otherwise occurred." *Id.* at 429.[2] In this regard, we reaffirm our observations made in *Lindsey, supra:*

> The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. . . .

> The plaintiff is not, however, required to prove the case beyond a reasonable doubt. The plaintiff need not negative entirely the possibility that the defendant's conduct was not a cause and it is enough to introduce evidence from which reasonable persons may conclude that it is more probable that the event was caused by the defendant. than that it was not. . . . (Citation omitted). A doctor's testimony that a certain thing is possible is no evidence at all. His opinion as to what is possible is no more valid than the jury's own speculation as to what is or is not possible. Almost anything is possible, and it is thus improper to allow a jury to consider and base a verdict upon a 'possible' cause of death. (Citation omitted). The mere possibility of a causal relationship, without more, is insufficient. . . .

*Lindsey*, 689 S.W.2d at 861–62. Thus, proof of causation equating to a "possibility," a "might have," "may have," "could have," is not sufficient, as a matter of law, to establish the required nexus between the plaintiff's injury and the defendant's tortious conduct

by a preponderance of the evidence in a medical malpractice case. Causation in fact is a matter of probability, not possibility, and in a medical malpractice case, such must be shown to a reasonable degree of medical certainty. *White v. Methodist Hosp. South,* 844 S.W.2d 642, 648–49 (Tenn.App.1992).

■ As stated earlier, the Plaintiffs in the present case have established that there is a "likelihood" that the delay in proper diagnosis and treatment caused "irreparable damage." The term "likelihood" can arguably be equated with a "probability." *See Webster's Third New International Dictionary, Unabridged* (Merriam Co.1971); *Black's Law Dictionary* (6th ed.) (West 1990); *contra White v. Methodist Hosp. South, supra* (medical malpractice case equating likelihood with a possibility and therefore insufficient). Nonetheless, we are persuaded that the loss of chance theory of recovery is fundamentally at odds with the requisite degree of medical certitude necessary to establish a causal link between the injury of a patient and the tortious conduct of a physician. As stated earlier, a plaintiff in Tennessee must prove that the physician's act or omission more likely than not was the cause in fact of the harm. *Lindsey*, 689 S.W.2d at 861. This requirement necessarily implies that the plaintiff must have had a better than even chance of surviving or recovering from the underlying condition absent the physician's negligence. T.C.A. § 29–26–115(a)(3) plainly requires that the plaintiff suffer injury "which would not otherwise have occurred." This statutory language is simply another way of expressing the requirement that the injury would not have occurred but for the defendant's negligence, our traditional test for cause in fact. Although a plaintiff can recover for harm stemming from the aggravation of an existing illness, the plaintiff may not recover damages for the loss of a less than even chance of

**2.** The Sixth Circuit in *Boburka* concluded that Tennessee has not adopted the loss of chance theory of recovery in medical malpractice cases "but instead continues to follow traditional [causation and proximate cause] principles." *Id.* at 431. Thus, the court determined that "[al]though Tennessee law requires this Court to draw a fine line between sufficient and insufficient proof of causation, we believe that a 'significant chance' plainly falls below the 'more likely than not' standard. Rather, testimony in this case concerning a 'significant chance' is comparable to testimony about a 'mere possibility' rejected by the Tennessee Supreme Court. . . ." *Id.* at 429.

obtaining a more favorable medical result. The traditional test for cause in fact prevents recovery because the patient's condition would more likely than not be the same even if the defendant had not been negligent.

■ Accordingly, we hold that a plaintiff who probably, i.e., more likely than not, would have suffered the same harm had proper medical treatment been rendered, is entitled to no recovery for the increase in the risk of harm or the loss of a chance of obtaining a more favorable medical result. Chief Justice Riley of the Michigan Supreme Court, in her dissent in *Falcon, supra,* reflects our sentiments in this regard:

> The 'lost chance of survival' theory urged by plaintiff represents not only a redefinition of the threshold of proof for causation, but a fundamental redefinition of the meaning of causation in tort law.
>
> *   *   *   *   *   *
>
> Relaxing the causation requirement might correct a perceived unfairness to some plaintiffs who could prove the possibility that the medical malpractice caused an injury but could not prove the probability of causation, but at the same time could create an injustice. Health care providers could find themselves defending cases simply because a patient fails to improve or where serious disease processes are not arrested because another course of action could possibly bring a better result. No other professional malpractice defendant carries this burden of liability without the requirement that plaintiffs prove the alleged negligence probably rather than possibly caused the injury. We cannot approve the substitution of such an obvious inequity for a perceived one.
>
> The lost chance of survival theory does more than merely lower the threshold of proof of causation; it fundamentally alters the meaning of causation.
>
> The most fundamental premise upon which liability for a negligent act may be based is cause in fact. (Citation omitted.) An act or omission is not regarded as a cause of an event if the particular event would have occurred without it. (Citation omitted.) If the defendant's acts did not

actually cause the plaintiff's injury, then there is no rational justification for requiring the defendant to bear the cost of the plaintiff's damages.

*   *   *   *   *   *

> I believe it is unwise to impose liability on members of the medical profession in such difficult circumstances as those now before this Court. Rather than deterring undesirable conduct, the rule imposed only penalizes the medical profession for inevitable unfavorable results. The lost chance of survival theory presumes to know the unknowable.

*Falcon,* 462 N.W.2d at 61, 64–68. This is not to say that a plaintiff could not recover for an aggravation of his physical condition if he proves by a balance of probabilities that the negligent act or omission caused the harm when there was a better than even chance of recovering to begin with.

The dissent argues that *Truan v. Smith,* 578 S.W.2d 73 (Tenn.1979), an opinion which has been described as "ambiguous," *see Boburka v. Adcock,* 979 F.2d 424 (6th Cir.1992), lends support for the adoption of loss of chance. It is true that in *Truan* the delay in proper diagnosis of the patient's cancer increased the chances of or accelerated the patient's death. *Id.* at 76. The Court, speaking through Justice Cooper, held that the evidence was sufficient to support a finding of negligence. *Id.* at 76–77. As conceded by the dissent, however, the dispositive issue in *Truan* was the physician's negligence, not whether Tennessee should recognize a new cause of action for loss of chance. Thus, this Court was not called upon in *Truan* to examine and analyze the implications of adopting loss of chance. This Court did not cite, much less discuss, any cases or other authority even remotely related to loss of chance.

We decline to relax traditional cause in fact requirements and recognize a new cause of action for loss of chance. Accordingly, the Plaintiffs in this case are not entitled to recover damages for the impaired opportunity for obtaining a more favorable medical result, the increase in the risk of harm, or the loss of a better chance of recovery or

survival. Plaintiffs also seek damages for additional medical treatment, pain and suffering, loss of earning capacity, etc., directly attributable to the negligence of the Defendant. We conclude that these items of damages are recoverable because the Plaintiffs have shown that such damages would not have been incurred but for the Defendant's negligence. Thus, the grant of summary judgment to the Defendant is sustained to the extent that it relates to the loss of chance or the increase in the risk of harm. Summary judgment as to the Plaintiffs' claims for the other items of damages noted above is reversed. Costs are to be split evenly between the parties.

O'BRIEN, J., concurs.

REID, C.J., files separate concurring opinion.

DAUGHTREY and ANDERSON, JJ., file separate concurring and dissenting opinions.

REID, Chief Justice, concurring.

This medical malpractice case, in which the plaintiffs allege that the defendant negligently failed to diagnose breast cancer, presents for review the trial court's award of summary judgment, affirmed by the Court of Appeals, finding that the record does not establish a disputed issue of fact as to causation. This Court's review shows that the affidavits filed by the plaintiffs, Sandra K. Kilpatrick and William Kilpatrick, are sufficient to withstand summary judgment as to the plaintiffs' claim for bodily injury, including pain and suffering, disfigurement, medical expenses, loss of earning capacity and loss of consortium, but not as to a claim for loss of a better chance of survival or an increase in the risk of harm.

The complaint alleges that the defendant Dr. James W. Bryant examined the plaintiff Ms. Sandra Kilpatrick in May 1987 and detected a lump in her right breast. He scheduled a mammogram, which was performed later that month. Ms. Kilpatrick alleges that Dr. Bryant advised her that the results of the mammogram were negative and that he did not suggest she "should participate in any type of follow-up treatment except on a routine basis." Four months later, in September 1987, Ms. Kilpatrick was examined by another physician, who diagnosed cancer in the right breast and promptly performed a right radical mastectomy for its removal.

The complaint alleges Dr. Bryant was negligent in relying on the findings of the radiologists in May 1987, and in his failure to advise Ms. Kilpatrick of the need for a follow-up examination. The complaint also avers that "as a direct and proximate result of his negligence, the Plaintiff, Sandra Kilpatrick, suffered more serious complications and a general worsening of her cancerous condition as a result of her cancer going undetected for approximately four months," requiring her to "seek additional medical treatment ... at additional expense, pain and suffering to the Plaintiffs; and that the worsened medical situation mentioned hereinabove may also be life-threatening." The complaint asserts that as a result, Sandra Kilpatrick "suffered loss of earning capacity, she has been rendered ill, sometimes disabled, and is unable to engage in the useful and enjoyable pleasures of life, all as a direct and proximate result of [Dr. Bryant's] negligence." It further alleges that the patient's husband, William Kilpatrick, has been deprived of the services, society, and consortium of his wife. In his answer, Dr. Bryant denies that he violated the applicable standard of care and further denies that the consequences which the plaintiff suffered were caused by any violation of the applicable standard of care.

The case is before the Court on this second defense, raised in a motion for summary judgment, the denial of any causal connection between the negligence alleged and the damages alleged. The plaintiffs, in opposition to the defendant's motion for summary judgment, filed affidavits made by James A. Schell, M.D., and Lee Morisy, M.D. Dr. Schell states in his affidavit that he is familiar with the recognized standard of care for physicians in Memphis, Tennessee, and the care and treatment of patients with suspected breast cancer. He further states that based upon a review of the medical record pertaining to the treatment of the plaintiff, Sandra Kilpatrick, it is his opinion that the defendant failed to meet the accepted stan-

dard of medical care. In his affidavit, Dr. Morisy states that he operated on Ms. Kilpatrick, for carcinoma of the right breast and performed a modified radical mastectomy. He further stated, specifically:

> I am of the medical opinion, based on a reasonable degree of medical certainty, that the delay of four (4) months in the operation performed increased the likelihood of Ms. Kilpatrick suffering irreparable damage.

No other evidence was produced by either party.

The requirements for a successful medical malpractice action are stated in T.C.A. § 29-26-115 (1980). That statute provides, in part pertinent, as follows:

> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided in subsection (b):
>
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Under this statute, a plaintiff is entitled to recover if the plaintiff proves negligence on the part of the physician, and, to a reasonable degree of medical certainty, the negligence was the proximate cause of the plaintiff's damages. *See e.g., White v. Methodist Hosp. South*, 844 S.W.2d 642, 648-49 (Tenn. App.1992).

At issue in this case, is whether the plaintiffs presented sufficient proof, in response to the motion for summary judgment, to create a disputed question of fact. Under *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993),

> When the party seeking summary judgment makes a properly supported motion, the burden then shifts to the nonmoving party to set forth specific facts, not legal conclusions, by using affidavits or the discovery materials listed in Rule 65.03, establishing that there are indeed disputed, material facts creating a genuine issue that needs to be resolved by the trier of fact and that a trial is therefore necessary.... The evidence offered by the nonmoving party must be taken as true.

*Id.* at 215. In order to establish causation, a plaintiff must show that, in the absence of the defendant's negligence, it is more probable than not that the injury of which the plaintiff complains would not have occurred. *Lindsey v. Miami Development Corp.*, 689 S.W.2d 856, 861-62 (Tenn.1985).

Consequently, in order to withstand a motion for summary judgment, the plaintiff must prove a causal relationship between the negligence alleged and the injury alleged. Also, the condition for which recovery is sought must constitute an injury for which damages may be recovered under Tennessee law. In this case, the plaintiffs contend that the harm sustained includes the loss of a better chance of survival. That alleged injury is described in the complaint as follows:

> that likewise, as a direct and proximate result of his negligence, Plaintiff, Sandra K. Kilpatrick, suffered more serious complications and a general worsening of her cancerous condition as a result of her cancer going undetected for approximately four months.

And further:

> the worsened medical situation mentioned hereinabove may also be life-threatening.

Assuming that these allegations are sufficient to state a claim for "loss of a better chance of survival" and/or "increase in the risk of harm," the plaintiff is entitled to go to trial with regard to only compensable injuries encompassed within the physicians' affidavits. The affidavits support causation of the traditional damages incident to bodily injury. However, Dr. Morisy's affidavit provides no support for any claim other than that for bodily injury. He merely attests to the "likelihood" of "irreparable damage." "Likelihood" means "probability" or "the quality or fact of being likely or probable."

*The Oxford English Dictionary* 948 (2d ed. 1989). The term, which may be read to mean "more likely than not," asserts legal proximate causation. However, the phrase "irreparable damages" is less than precise. Since the plaintiff does not undertake to assert a claim for wrongful death, it is only another way of claiming permanent bodily injuries.

The further issue, then, is whether "loss of a better chance of survival, or an increase in the risk of harm" (loss of chance) is recognized as a bodily injury under Tennessee law. If it is an injury for which damages may be recovered, the motion for summary judgment must be denied because the complaint and the medical affidavit assert that "as a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred." T.C.A. § 29–26–115(3).

It should be noted that even though the *measure* of damages is discussed in the traditional context of damages for bodily injury or death, the essential nature of the "injury" is *chance* or *risk*. The main opinion finds lack of causation because the proof does not show that the plaintiff "had a better than even chance of surviving or recovering from the underlying condition absent the physician's negligence." *Supra* at 602. The dissent would follow *Perez v. Las Vegas Medical Center,* 107 Nev. 1, 805 P.2d 589, 592 (1991) and discount the amount recoverable for the person's wrongful death, but find,

> Specifically "[the] amount of damages recoverable is equal to the percent of chance [of survival] lost [due to negligence] multiplied by the total amount of damages which are ordinarily allowed in a wrongful death action."

Daughtrey, J., dissenting at 613 (quoting *Perez v. Las Vegas Medical Center,* 805 P.2d at 592). Under this formulation of the claim as a statistical probability, neither the plaintiff's complete recovery nor her death would affect the damages awarded. Recognizing loss of chance as an injury for which damages may be awarded would, at least in principle, revolutionize the traditional concept of bodily injury. And further, as stated by Chief Justice Phillips in *Kramer v. Lewisville*

*Memorial Hospital,* 858 S.W.2d 397, 406 (Tex.1993),

> assuming we adopt the loss of chance doctrine in the context of this medical malpractice action, it is doubtful that there is any principled way we could prevent its application to similar actions involving other professionals.

Accordingly, I concur that summary judgment as to the plaintiffs' claims for damages for bodily injury be reversed and summary judgment, to the extent that the plaintiffs seek damages for loss of a better chance of survival or an increase in the risk of harm, be sustained.

DAUGHTREY, Justice, concurring in part and dissenting in part.

I agree with the conclusion in the lead opinion that the trial court's order of full summary judgment in the defendant's favor should not be permitted to stand. The plaintiff has alleged that the defendant's negligence proximately caused her additional, unnecessary suffering, medical treatment, and loss of earning capacity, for all of which the majority in this case would permit recovery of damages. I write separately to point out that the same reasoning that supports this limited recovery of damages by the plaintiff also supports the recovery of damages for her lost chance of recovery or increased risk of harm, if the proof at trial establishes that this injury, like the others recognized by the majority, was proximately caused by the defendant's negligence.

Moreover, in limiting recovery at the summary judgment stage, the majority has brushed aside existing Tennessee case law that implicitly recognizes a patient's right to recover for increased risk of harm in a medical malpractice action. *See Truan v. Smith,* 578 S.W.2d 73 (Tenn.1979), in which the circumstances were virtually identical to those alleged in the complaint now before us. In view of Justice Drowota's past criticism of his colleagues' perceived failure to adhere to established precedent, his current failure as author of the lead opinion to give appropriate weight to *Truan* seems, at best, uncharacteristic. *See, e.g., State v. Middlebrooks,* 840

S.W.2d 317, 348 (Tenn.1992) (Drowota, J., concurring and dissenting).

In *Truan*, as here, the plaintiff alleged negligence on the part of her physician in failing to diagnose breast cancer for some four months past the time that the tumor was detectable, thereby permitting the cancer to metastasize. In that case, we allowed recovery of damages based on proof that Dr. Truan's negligence "either materially increased the chances of or accelerated Mrs. Smith's death." *Id.* at 76. It is true, as the majority notes, that the disputed issue in *Truan* was the existence of the physician's negligence and not the scope of damages awarded by the jury, which totalled $185,000. *Id.* at 74. At the same time, there is no criticism by the Court, implicit or explicit, that would undermine the full award of damages in *Truan* for the plaintiff's lost opportunity to make a full recovery.

By contrast, the author of the lead opinion in this case criticizes and ultimately rejects the "loss of chance" doctrine as destructive of the proximate cause standard in medical malpractice cases. Although this view has been accepted by a small handful of cases, the vast majority of jurisdictions in this country have rejected it. A proper analysis will demonstrate the reason that the "loss of chance" doctrine has gained such rapid and widespread acceptance.

The traditional view of proximate cause in a medical malpractice action requires proof that the injury suffered by the patient would not have occurred but for the negligence of the defendant. Where the negligence of the defendant is not the only cause of the injury,

this standard means that the plaintiff must prove that the defendant was at least 51 percent responsible for the outcome. Under what has been called the "all-or-nothing approach" of allocating damages under this rule,[1] a plaintiff who successfully meets the 51 percent standard recovers 100 percent of the damages from the defendant, even though the defendant may have been only partly responsible for the result. Conversely, a plaintiff who can establish only that the defendant was 50 percent responsible (or less) collects nothing from the tortfeasor.

As one state high court has noted, this "all-or-nothing approach" is "an extreme position" and "clearly distorts the traditional principles of causation." *DeBurkarte v. Louvar,* 393 N.W.2d 131, 137 (Iowa 1986). In response to the overinclusive and underinclusive effects of the rule, a rapidly growing number of common law courts has developed an analysis of proximate cause that allows the allocation of damages in medical malpractice cases to acknowledge the injury to patients who put themselves in their doctors' hands with a less than 51 percent chance of survival, and are deprived of their remaining chances by physician negligence.

The "loss of chance" or "increased risk of harm" doctrine actually has its roots in contract law. *See, e.g., Chaplin v. Hicks,* 2 K.B. 786 (C.A.1911).[2] The doctrine was first applied to torts in the context of maritime "duty to rescue" cases. *See, e.g., Gardner v. Nat'l Bulk Carriers, Inc.,* 310 F.2d 284 (4th Cir.1962), *cert. denied,* 372 U.S. 913, 83 S.Ct. 728, 9 L.Ed.2d 721 (1963).[3] The "duty to

---

1. King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences,* 90 Yale L.J. 1353, 1366 (1981).

2. In *Chaplin,* the plaintiff was one of 50 semifinalists in a beauty contest. Twelve out of the 50 were to be awarded three-year acting contracts. The defendant failed to notify the plaintiff of her selection as a semi-finalist until it was too late for her to appear for her personal interview. As a result, the plaintiff was not chosen to receive the acting contract. The plaintiff brought an action for breach of contract. The jury determined that the value of the lost chance was £100. The lower court's judgment was affirmed by the Court of Appeal, which recognized that the plaintiff was not suing for the value of the acting

contract, but the value of a chance to win the contract. The court held that such chance was a compensable interest. Further, the court noted that difficulty in assessing damages should not bar recovery.

3. In *Gardner,* the master of a ship failed to attempt to rescue one of his seamen who had fallen overboard. The seaman was last seen on the vessel five and one-half hours earlier, although it was not known how long he had been overboard. At trial, testimony was presented that there was some possibility that a rescue attempt could have saved the seaman's life. The court stated:

It was less than a duty to rescue him, but it was a positive duty to make a sincere attempt at rescue. The duty is of such nature that its

rescue" analogy was later utilized in a medical malpractice case as *dictum* in *Hicks v. United States*, 368 F.2d 626 (4th Cir.1966) (applying Virginia law). In that case, the plaintiff brought suit against a Navy doctor under the Federal Tort Claims Act. Evidence indicated the patient would have had more than a 50 percent chance of surviving an obstruction of her small intestine had she not been negligently diagnosed by the doctor. The Fourth Circuit Court of Appeals in *Hicks* said:

> When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization. If there was any *substantial possibility* of survival and the defendant has destroyed it, he is answerable. Rarely is it possible to demonstrate to an absolute certainty what would have happened in circumstances the wrongdoer did not allow to come to pass. The law does not in the existing circumstances require the plaintiff to show to a *certainty* that the patient would have lived had she been hospitalized and operated on promptly. *Harvey v. Silber*, 300 Mich. 510, 2 N.W.2d 483 (1942).

368 F.2d at 632 (emphasis added to "substantial possibility").

The discussion of a "substantial possibility" was superfluous in *Hicks* because the record established that there was a "reasonable probability" that the decedent would have survived in the absence of the defendant's negligence. *Id.* at 633. Twenty-five years after the *Hicks* decision, the Fourth Circuit Court of Appeals reexamined the "substantial possibility" language of *Hicks* in some detail and interpreted "substantial possibility" to be tantamount to a "probability". The court concluded that "*Hicks* made no change to the law that requires the plaintiff to establish proximate cause by a preponderance of the evidence in order to prove medical malpractice negligence." *Hurley v. United*

*States*, 923 F.2d 1091, 1095 (4th Cir.1991) (applying Maryland law).

In the meantime, however, various courts had relied on the "substantial possibility" language in *Hicks* to relax the traditional standard of causation and to hold that destruction of such a "substantial possibility," even if it amounts to less than a 50 percent chance of recovery, would satisfy that standard. *See, e.g., Jeanes v. Milner*, 428 F.2d 598 (8th Cir.1970) (applying Arkansas law); *Kallenberg v. Beth Israel Hosp.*, 45 A.D.2d 177, 357 N.Y.S.2d 508 (1974). Other courts, however, have recognized that the oft-quoted passage from *Hicks* set out above was mere *dictum* and have rested the development of their analysis on other grounds.

For example, the "increased risk of harm" formulation has been applied to medical malpractice cases in several jurisdictions on the basis of Restatement (Second) of Torts § 323 (1965). Section 323 provides:

> One who undertakes ... to render services to another ᴠwhich he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care *increases the risk of such harm* ... (emphasis added).

Some courts have interpreted Section 323 as relaxing the standard for the burden of proof for causation and have, consequently, adopted a "substantial factor" standard. Under this approach, once the plaintiff shows that the defendant's negligence increased the risk that the plaintiff's injury would occur, Section 323(a) allows the trier of fact to determine whether the negligence was a substantial factor in causing the injury, entitling the plaintiff to recovery. See, *e.g., Scafidi v. Seiler*, 119 N.J. 93, 574 A.2d 398 (1990); *Aasheim v. Humberger*, 215 Mont. 127, 695 P.2d 824, 828 (1985); *Sharp v. Kaiser Found. Health Plan of Colorado*, 710 P.2d 1153 (Colo.App.1985); *Thompson v. Sun City*

---

omission will contribute to cause the seaman's death. The duty arises when there is a reasonable possibility of rescue. Proximate cause is tested by the same standard, i.e. causation is

proved if the master's omission destroys the reasonable possibility of rescue.
310 F.2d at 287.

*Community Hosp., Inc.,* 141 Ariz. 597, 688 P.2d 605 (1984); *Roberson v. Counselman,* 235 Kan. 1006, 686 P.2d 149 (1984); *Thornton v. CAMC,* 172 W.Va. 360, 305 S.E.2d 316 (1983); *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978). Other courts have held that Section 323 defines the duty owed by the defendant health care provider to the plaintiff patient, but that it has no effect on the standard of proof of causation. *See, e.g., McKellips v. Saint Francis Hosp., Inc.,* 741 P.2d 467, 474–5 (Okla.1987); *Ehlinger v. Sipes,* 155 Wis.2d 1, 454 N.W.2d 754, 758 (1990). Still others have utilized Section 323 as a criterion for deciding whether there is "sufficient evidence of proximate cause to go to the jury," but hold that it is inappropriate for use as a jury instruction. *See, e.g., Blondel v. Hays,* 241 Va. 467, 403 S.E.2d 340, 344 (1991).

In what turned out to be a watershed opinion on the "loss of chance" doctrine, a divided Washington Supreme Court held in a 1983 decision that, on the basis of Section 323, recovery of apportioned damages should be permitted "where the estate can show probable reduction in statistical chance for survival but cannot show and/or prove that with timely diagnosis and treatment [of his lung cancer], decedent probably would have lived to normal life expectancy." *Herskovits v. Group Health Coop. of Puget Sound,* 99 Wash.2d 609, 664 P.2d 474 (1983). In so holding, the *Herskovits* majority followed the reasoning of the Pennsylvania Supreme Court in *Hamil v. Bashline,* 392 A.2d 1280, and applauded that court's adoption of Section 323.

However, in a concurring opinion that was to make him a luminary in the development of "loss of chance" causality in medical malpractice cases over the next decade, Associate Justice Vernon Pearson rejected the majority's Section 323 reasoning as constituting an unwarranted departure from established Washington law on causation and offered instead a different analysis for the court's decision. Justice Pearson first noted that under Washington law, "cause in fact must usually be established by expert medical testimony, and must be established beyond the balance of probabilities." *Id.* 664 P.2d at 481. Thus,

he concluded, the court "must decide whether Dr. Ostrow's testimony established that the act complained of (the alleged delay in diagnosis) 'probably' or 'more likely than not' caused Mr. Herskovits' subsequent disability." *Id.* Justice Pearson continued:

In order to make this determination, we must first define the "subsequent disability" suffered by Mr. Herskovits. Therein lies the crux of this case, for it is possible to define the injury or "disability" to Mr. Herskovits in at least two different ways. First, and most obviously, the injury to Herskovits might be viewed as his death. Alternatively, however, the injury or disability may be seen as the reduction of Mr. Herskovits' chance of surviving the cancer from which he suffered.

Therefore, although the issue before us is primarily one of causation, resolution of that issue requires us to identify the nature of the injury to the decedent. *Our conception of the injury will substantially affect our analysis. If the injury is determined to be the death of Mr. Herskovits, then under the established principles of proximate cause plaintiff has failed to make a prima facie case.* Dr. Ostrow was unable to state that probably, or more likely than not, Mr. Herskovits' death was caused by defendant's negligence. On the contrary, it is clear from Dr. Ostrow's testimony that Mr. Herskovits would probably have died from cancer even with the exercise of reasonable care by defendant. *Accordingly, if we perceive the death of Mr. Herskovits as the injury in this case, we must affirm the trial court, unless we determine that it is proper to depart substantially from the traditional requirements of establishing proximate cause in this type of case.*

*If, on the other hand, we view the injury to be the reduction of Mr. Herskovits' chance of survival, our analysis might well be different.* Dr. Ostrow testified that the failure to diagnose cancer in December 1974 probably caused a substantial reduction in Mr. Herskovits' chance of survival. *The [more likely than not] standard of proof is therefore met.*

*Id.* (emphasis added).

After a detailed examination of the cases that had preceded *Herskovits,* decided princi-

pally on the basis of the *dictum* in *Hicks* or the "increased risk of harm" formulation taken from Section 323, Justice Pearson pointed to "the thoughtful discussion [on the subject by] a recent commentator," citing to King, *Causation, Valuation and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences,* 90 Yale L.J. 1353 (1981). *Herskovits,* 664 P.2d at 486. Justice Pearson pointed specifically to the following portion of King's influential article:

> Causation has for the most part been treated as an all-or-nothing proposition. Either a loss was caused by the defendant or it was not. Inexplicably, the all-or-nothing approach has been allowed to slip its analytical moorings, influencing the identification and valuation of losses in cases involving preexisting conditions and claims for future consequences. A plaintiff ordinarily should be required to prove by the applicable standard of proof that the defendant caused the loss in question. *What* caused a loss, however, should be a separate question from what the *nature and extent* of the loss are. The distinction seems to have eluded the courts, with the result that lost chances in many respects are compensated either as certainties or not at all.
>
> To illustrate, consider the case in which a doctor negligently fails to diagnose a patient's cancerous condition until it has become inoperable. Assume further that even with a timely diagnosis the patient would have had only a 30% chance of recovering from the disease and surviving over the long term. There are two ways of handling such a case. Under the traditional approach, this loss of a not-better-than-even chance of recovering from cancer would not be compensable because it did not appear more likely than not that the patient would have survived with proper care. Recoverable damages, if any, would depend on the extent to which it appeared that cancer killed the patient sooner than it would have with timely diagnosis and treatment, and on the extent to which the delay in diagnosis aggravated the patient's condition, such as by causing additional pain. A more rational approach, however, would allow recovery for the loss of a chance of cure even though the chance was not better than even. The probability of long-term survival would be reflected in the amount of damages awarded for the loss of the chance. While the plaintiff here could not prove by a preponderance of the evidence that he was denied a cure by the defendant's negligence, he could show by a preponderance that he was deprived of a 30% chance of cure.

90 Yale L.J. at 1363–1364 (emphasis in original), *quoted in part in Herskovits,* 664 P.2d at 486 (Pearson, J., concurring). In the wake of the *Herskovits* decision, both Justice Pearson and Professor King have been extolled by various courts convinced of the usefulness of the lost-chance-as-injury theory that King articulated and Pearson championed. *See, e.g., Perez v. Las Vegas Medical Ctr.,* 107 Nev. 1, 805 P.2d 589 (1991); *Falcon v. Memorial Hosp.,* 436 Mich. 443, 462 N.W.2d 44 (1990); *DeBurkarte v. Louvar,* 393 N.W.2d 131 (Iowa 1986); *Thompson v. Sun City Community Hosp., Inc.,* 141 Ariz. 597, 688 P.2d 605 (1984).

It is true that the all-or-nothing approach has been retained by the highest courts in some states when asked to adopt the "loss of chance" doctrine in medical malpractice cases, on the hypothesis that to do otherwise would destroy the traditional proximate cause test. But the number of jurisdictions taking this course is very small. Of the 16 cases cited in the majority opinion as rejecting "loss of chance" or "increased risk of harm" as a theory of recovery of damages, only *seven,* in fact, actually decide that issue. *See Gooding v. Univ. Hosp. Bldg., Inc.,* 445 So.2d 1015 (Fla.1984); *Fennell v. S. Maryland Hosp.,* 320 Md. 776, 580 A.2d 206 (1990); *Cooper v. Sisters of Charity of Cincinnati, Inc.,* 27 Ohio St.2d 242, 272 N.E.2d 97 (1971); *Pillsbury–Flood v. Portsmouth Hosp.,* 128 N.H. 299, 512 A.2d 1126 (1986); *Sherer v. James,* 290 S.C. 404, 351 S.E.2d 148 (1986); *Kramer v. Lewisville Memorial Hosp.,* 858 S.W.2d 397 (Tex.1993); *Manning v. Twin Falls Clinic and Hosp.,* 122 Idaho 47, 830 P.2d 1185 (1992). One additional state supreme court arguably supports the majority position, but only tangentially. *See Clayton v. Thompson,* 475 So.2d 439 (Miss.1985). *See*

*also Ladner v. Campbell,* 515 So.2d 882 (Miss.1987).

The remaining cases cited in the lead opinion cannot legitimately be interpreted to reject "loss of chance" as a cause of action, either because the issue was not before the court, or because it was not the basis for the court's decision.[4] In addition, one of the cited cases involves speculation by a federal appeals court that the state courts of New Mexico would reject "loss of chance" as a

theory of recovery if presented with the opportunity to do so; the Tenth Circuit panel acknowledged, however, that there were no state cases on point.[5]

In dramatic contrast to these half-dozen or so cases, the overwhelming weight of authority is contrary to the position taken by the majority here. Courts in some 30 or more jurisdictions have permitted the recovery of damages for "loss of chance" or "increased risk harm." [6] Moreover, many of the courts

4. *See Blondel v. Hays,* 241 Va. 467, 403 S.E.2d 340, 344 (1991) (in wrongful death action based on medical malpractice, court held that "if a plaintiff's evidence has shown that the defendant's negligence has destroyed any substantial possibility of a patient's survival, then there is sufficient evidence of proximate cause to go to the jury," but indicated that this language should not be used in jury instruction); *Grody v. Tulin,* 170 Conn. 443, 365 A.2d 1076 (1976) (wrongful death action based on negligent failure to diagnose allegedly causing needless suffering and premature death *not* loss of chance of survival); *Watson v. Medical Emergency Servs. Corp.,* 532 N.E.2d 1191 (Ind.App.1989) (dispositive issue involved existence or non-existence of negligence); *Cornfeldt v. Tongen,* 295 N.W.2d 638, 640 (Minn. 1980) ("loss of chance" as a distinct theory of damages not raised, although court did say that jury "cannot be permitted to speculate as to whether earlier diagnosis or different treatment would have resulted in a cure"); *Walden v. Jones,* 439 S.W.2d 571, 574 (Ky.1968) (in medical malpractice action for undiagnosed herniated disc, court held that "bare possibility" that failure to operate caused paralysis was not enough to establish proximate cause); *Horn v. Nat'l Hosp. Ass'n.,* 169 Or. 654, 131 P.2d 455 (1942) (dispositive issue concerned the standard of proof in a medical malpractice action based on a physician's nonfeasance, rather than misfeasance).

5. *Alfonso v. Lund,* 783 F.2d 958 (10th Cir.1986).

6. *See e.g., Waddell v. Jordan,* 293 Ala. 256, 302 So.2d 74, 77 (1974) ("although prompt diagnosis and treatment might not have prevented a massive heart attack, such could have delayed or even prevented a terminal attack and impeded further damage of the heart"); *Abille v. United States,* 482 F.Supp. 703, 710 (N.D.Cal.1980) (applying Alaska law) ("[w]here improper diagnostic techniques have been utilized, it is enough to show that the use of proper procedures could have altered the unfortunate outcome"); *Thompson v. Sun City Community Hosp., Inc.,* 141 Ariz. 597, 608, 688 P.2d 605, 616 (1984) ("[w]e must remember ... that we are dealing with the limited class of cases in which defendant undertook to protect plaintiff from a particular harm and negligently interrupted the chain of events, thus

increasing the risk of that harm[;] ... [i]f the jury finds that defendant's failure to exercise reasonable care increased the risk of the harm he undertook to prevent, it may from this fact find a 'probability' that defendant's negligence was the cause of the damage"); *Jeanes v. Milner,* 428 F.2d 598, 604 (8th Cir.1970) (applying Ark. law) (" '[i]t is not required in a case of this kind that the injured party show to a mathematical certainty or to the exclusion of every other hypothesis that his injury occurred as a result of the negligence of which he complains' "); *Sharp v. Kaiser Found. Health Plan,* 710 P.2d 1153, 1156 (Colo.App.1985) ("[e]ven though plaintiffs' evidence shows that Mrs. Sharp had less than a 50% chance of suffering a heart attack, her expert's testimony that her chances of suffering a heart attack were increased by 20 to 25% is sufficient evidence of causation in fact to allow a jury to consider whether defendant's failure to properly treat Mrs. Sharp was a substantial factor in causing her injuries"), aff'd on narrower grounds, *Kaiser Found. Health Plan v. Sharp,* 741 P.2d 714 (Colo.1987); *Richmond County Hosp. Authority Operating Univ. Hosp. v. Dickerson,* 182 Ga.App. 601, 356 S.E.2d 548, 550 (1987) ("[p]roximate cause is not eliminated by merely by establishing by expert opinion that the patient had less than a fifty percent chance of survival had the negligence not occurred"); *DeBurkarte v. Louvar,* 393 N.W.2d 131, 136 (Iowa 1986) ("[w]hen a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization[;] [i]f there was any substantial possibility of survival and defendant has destroyed it, he is answerable"); *Roberson v. Counselman,* 235 Kan. 1006, 686 P.2d 149, 160 (1984) ("the failure to obtain proper treatment increased Mr. Roberson's chances of dying from the heart attack from at 19% mortality rate to a 25% mortality rate"); *Smith v. State Dept. of Health,* 523 So.2d 815, 821 (La.1988) ("[t]he plaintiff need only show that the decedent had a chance of survival which was denied to her as a result of the defendant's negligence"); *Joudrey v. Nashoba Community Hosp., Inc.,* 32 Mass.App. Ct. 974, 592 N.E.2d 769, 772 (1992) ("[i]n cases in which a physician's negligent conduct has

that have most recently recognized "loss of chance" as a theory of recovery have deliber-

caused a delay in the diagnosis of a patient's cancer, proximate causation can be proved by expert evidence which shows ... that the patient 'would have had a much improved chance of survival or longer life if diagnosis and treatment meeting accepted standards of care had been appropriately initiated' "); *Bell v. United States*, 854 F.2d 881, 890 (6th Cir.1988) (applying Michigan law) ("the district court erred when it interpreted Michigan law as mandating proof of a probability of recovery which was greater than 50%"); *see also Falcon v. Memorial Hosp.*, 436 Mich. 443, 462 N.W.2d 44 (1990); *Aasheim v. Humberger*, 215 Mont. 127, 695 P.2d 824, 828 (1985) ("[w]e feel that including 'loss of chance' within causality recognizes the realities inherent in medical negligence litigation[;] [p]eople who seek medical treatment are diseased or injured[;] [f]ailure to diagnose or properly treat denies the opportunity to recover[;] [i]ncluding this lost opportunity within the causality embrace gives recognition to a real loss consequence of medical failure"); *Perez v. Las Vegas Medical Ctr.*, 107 Nev. 1, 805 P.2d 589, 592 (1991) ("the best rationale supporting recovery in these circumstances is the loss of chance doctrine[;] [u]nder this doctrine, the injury to be redressed by the law is not defined as the death itself, but, rather, as the decreased chance of survival caused by the medical malpractice"); *Scafidi v. Seiler*, 119 N.J. 93, 574 A.2d 398, 405–6 (1990) ("[e]vidence demonstrating within a reasonable degree of medical probability that negligent treatment increased the risk of harm posed by a preexisting condition raises a jury question whether the increased risk was a substantial factor in producing the ultimate result"); *Kallenberg v. Beth Israel Hosp.*, 45 A.D.2d 177, 357 N.Y.S.2d 508, 511 (1974) ("had Mrs. Kallenberg been properly treated with the indicated medication of choice, her blood pressure could have been kept under control, and she might have improved sufficiently, even after August 22, to undergo surgery and make a recovery"); *Morrison v. Stallworth*, 73 N.C.App. 196, 326 S.E.2d 387, 393 (1985) ("[w]e conclude that shortened life expectancy is a compensable element of damage"); *McKellips v. Saint Francis Hosp.*, 741 P.2d 467, 474 (Okla. 1987) ("where a health care provider deprives a patient of a significant chance of recovery by negligently failing to provide medical treatment, the health care professional should not be allowed to come in after the fact and allege that the result was inevitable inasmuch as that person put the patient's chance beyond the possibility of realization"); *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280, 1288 (1978) ("once a plaintiff has demonstrated that defendant's acts or omissions ... have increased the risk of harm to another, such evidence furnishes a basis for the fact-finder to go further and find that such increased risk was in turn a substantial factor in bringing about the resultant harm"); *Rosario v. Am. Export–Isbrandtsen Lines, Inc.*, 395 F.Supp. 1192, 1210 (E.D.Pa.1975) (applying Puerto Rico law) ("[i]t is enough ... if the plaintiff shows a substantial

possibility of avoiding the ultimate harm, and ... the negligence complained of eliminated this possibility") *rev'd on other grounds*, 531 F.2d 1227 (3d Cir.), *cert denied*, 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976); *Voegeli v. Lewis*, 568 F.2d 89, 94 (8th Cir.1977) (applying S.D. law) ("[i]n this case it was necessary to prove by a preponderance of the evidence that Dr. Lewis' negligence operated substantially to reduce the chances of saving the leg"); *Truan v. Smith*, 578 S.W.2d 73, 76 (Tenn.1979) ("had the cancer been treated before that dated, Mrs. Smith's chances of either remission or recovery would have materially increased"); *George v. LDS Hosp.*, 797 P.2d 1117, 1122 (Utah App.1990) ("[a] jury could have reasonably concluded that the failure of the nurses to notify Dr. Lloyd or Dr. Lahey of Mrs. George's change in condition prevented them from diagnosing, treating, and possibly saving her life and that this failure therefore was a proximate cause of her worsened condition and ensuing death"); *Blondel v. Hayes*, 241 Va. 467, 403 S.E.2d 340, 344 (1991) (" '[i]f there was any substantial possibility of survival and the defendant has destroyed it, he is answerable' "); *Herskovits v. Group Health Coop*, 99 Wash.2d 609, 664 P.2d 474, 478 (1983) ("[i]t is not necessary for a plaintiff to introduce evidence to establish that the negligence resulted in the injury or death, but simply that the negligence increased the *risk* of injury or death"); *Snead v. United States*, 595 F.Supp. 658, 665 (D.D.C.1984) ("[i]n cases involving alleged medical mismanagement of a patient's existing and potentially fatal condition, the appropriate test for causation is the 'substantial factor' test").

An additional measure of the rapid trend toward recognition of the "loss of chance" doctrine is the extent of the attention it has received in legal journals and other legal publications in the last 10 years. One recent American Law Reports annotation, for example, devotes over 135 pages to an analysis of damages in such cases. *See* Annotation, *Medical Malpractice: Measure and Elements of Damages in Actions Based on Loss of Chance*, 81 A.L.R.4th 485 (1990). *See also*, Annotation, *Medical Malpractice: "Loss of Chance" Causality*, 54 A.L.R.4th 10 (1987); Annotation, *Recovery in Death Action for Failure to Diagnose Incurable Disease Which Caused Death*, 64 A.L.R. 4th 1232 (1988); *Damages for Loss of Chance of Cure*, 12 Am.Jur. Proof of Facts 3d (1991). For comment in addition to the articles cited in the majority opinion, *see* Andel, *Medical Malpractice: The Right to Recover for the Loss of a Chance of Survival*, 12 Pepperdine L.Rev. 973 (1985); Smith, *Increased Risk of Harm: A New Standard for Sufficiency of Evidence of Causation in Medical Malpractice Cases*, 65 B.U.L.Rev. 275 (1985); Roubik, *Recovery for "Loss of Chance" in a Wrongful Death Action*, 59 Wash.L.Rev. 981 (1984); Wolfstone, *Recovery of Damages for the Loss of a Chance*, 1982 Med. Trial Tech. Q. 121.

ately fashioned their causation analysis to avoid doing damage to the traditional concept of proximate cause.

For example, in *Perez v. Las Vegas Medical Ctr.*, 107 Nev. 1, 805 P.2d 589 (1991), a prisoner, Lopez, who was incarcerated in a county detention center, died of a massive brain hemorrhage, apparently due to an aneurysm or congenital arterial defect. Lopez had been transferred to a hospital after he complained of headaches. Doctors made no attempt to diagnose the headaches, and after five days he was returned to jail. A few days later, Lopez experienced seizures and died. A wrongful death action was brought on behalf of Lopez, alleging medical malpractice by the hospital and doctor. A medical expert, testifying in a deposition on behalf of the plaintiff, stated that Lopez would have had a "reasonable chance," but probably not a greater than 50 percent chance, of surviving the hemorrhage if he had been given the proper medical care. The trial court granted summary judgment for defendants, but the Supreme Court of Nevada reversed, adopting the "loss of chance" doctrine. The court stated:

> By defining the injury as the loss of chance of survival, the traditional rule of preponderance is fully satisfied. In cases in which the plaintiff prevails, it can be said that the medical malpractice *more probably than not* decreased a substantial chance of survival and that the injured person ultimately died or was severely debilitated. Specifically, in order to create a question of fact regarding causation in these cases, the plaintiff must present evidence tending to show, to a reasonable medical probability, that some negligent act or omission by health care providers reduced a substantial chance of survival given appropriate medical care.

*Id.* 805 P.2d at 592 (emphasis in original).

On the issue of damages, the Nevada court concluded:

> Additionally, the damages are to be discounted to the extent that a preexisting condition likely contributed to the death or serious debilitation. Specifically, "[t]he amount of damages recoverable is equal to the percent of chance [of survival] lost [due

to negligence] multiplied by the total amount of damages which are ordinarily allowed in a wrongful death action."

*Id.* (quoting *McKellips,* 741 P.2d at 476).

Similarly, in *Falcon v. Memorial Hosp.*, 436 Mich. 443, 462 N.W.2d 44 (1990), a woman died as a result of an ammonitic fluid embolism during childbirth. An expert witness testified for the plaintiff that the survival rate of such a condition is 37.5 percent if an intravenous line is connected to the patient before the onset of the embolism. The plaintiff's theory was that the intravenous line could have been used to infuse lifesaving fluids into the patient's circulatory system. However, no intravenous line had been inserted.

A majority of the Michigan Supreme Court adopted the "loss of chance" doctrine, stating:

> A number of courts have recognized, as we would, loss of an opportunity for a more favorable result, as distinguished from the unfavorable result, as compensable in medical malpractice actions. Under this approach, damages are recoverable for the loss of opportunity although the opportunity lost was less than even, and thus it is not more probable than not that the unfavorable result would or could have been avoided.
>
> Under this approach, the plaintiff must establish more-probable-than-not causation. He must prove, more probably than not, that the defendant reduced the opportunity of avoiding harm.

*Id.* 462 N.W.2d at 52–53 (footnotes omitted).

On the issue of damages, the *Falcon* court noted that "[t]he proper computation of damages would limit the damages recoverable to only that amount of reduced chance of recovery actually caused by the physician's negligent conduct. The theory, where adopted, should not result in an 'all or nothing' approach to causation." *Id.* at 57 n. 47.

In *DeBurkarte,* 393 N.W.2d 131, a plaintiff brought a medical malpractice action against her family physician for negligently failing to diagnose breast lumps as cancerous. Expert testimony at trial indicated that at the time of the misdiagnosis, plaintiff's chances for

survival were at least 50 percent and perhaps as high as 80 percent, while at the time of trial they were zero. The Iowa Supreme Court held that "[f]rom this testimony, the jury could find that the defendant *probably* caused a reduction in her chance of survival." *Id.* at 137–38 (emphasis in original). The court approved recovery for damages, but only to the extent that they resulted from the reduction of the plaintiff's chance of survival. *Id.* at 138.

In these and similar cases, the standard of proof for causation remains a probability, *i.e.*, greater than 50 percent, but the injury is redefined as the loss of chance to survive or to achieve a better outcome. If the majority here is sincere in its determination to adhere to the traditional proximate cause standard, it can obviously do so without denying patients injured by negligence the right to sue their tortfeasors—simply by following the lead of the courts that have redefined the injury, but have not lessened the standard of proof of causation.

Notably, the path the majority has determined to follow is that of a sharply divided Texas Supreme Court in *Kramer v. Lewisville Memorial Hosp.* 858 S.W.2d 397 (Tex. 1993), rather than the precedent in the state of Tennessee as well as the overwhelming majority of other jurisdictions that have considered the question. Moreover, in adopting the Texas court's reasoning as the new rule in Tennessee, the majority does more than merely disregard its own precedent. It establishes a policy that protects negligent physicians at the expense of patients who have suffered a very real injury at their physicians' hands. As the Oklahoma Supreme Court in *McKellips v. Saint Francis Hosp., Inc.* noted:

[I]n those situations where a health care provider deprives a patient of a significant chance for recovery by negligently failing to provide medical treatment, the health care professional should not be allowed to come in after the fact and allege that the result was inevitable, inasmuch as that person put the patient's chance beyond the possibility of realization. Health care providers should not be given the benefit of the uncertainty created by their own negli-

gent conduct. To hold otherwise would in effect allow care providers to evade liability for their negligent actions or inactions in situations in which patients would not necessarily have survived or recovered, but still would have had a significant chance or survival or recovery.

741 P.2d at 474. As another court expressed it, a rule of law that does not permit recovery for what may have been a substantial opportunity to avoid death or permanent injury, "in essence, declares open season on critically ill or injured persons, as care providers would be free of liability for even the grossest malpractice if the patient had only a fifty-fifty chance of surviving the disease or injury even with the proper treatment." *Roberson v. Counselman,* 686 P.2d at 160.

Finally, the approach the lead opinion takes in this case

... puts a premium on each party's search for the willing witness. Human nature being what it is, and the difference between scientific and legal tests for "probability" often creating confusion, for every expert witness who evaluates the lost chance at 49% there is another who estimates it at closer to 51%.

*Thompson v. Sun City Community Hosp.,* 141 Ariz. at 607, 688 P.2d at 615.

Here, for example, if the plaintiffs produce an expert who testifies that with timely diagnosis Sandra Kilpatrick had at least a 51 percent chance of full recovery (or of a longer life expectancy), she will be able to recover the very kind of damages that the majority in this case has ostensibly denied her, based on their apparent assumption that the proof will show that she had a 50 percent or less chance of survival when she first appeared in Dr. Bryant's office. Indeed, the estate of a deceased patient victimized by medical malpractice would not be limited in the recovery of damages for wrongful death in any case in which expert testimony established an original chance of recovery of more than 50 percent. Hence, the defendant in such a case would pay 100 percent of the total damages, rather than the percentage of damage for which he or she was actually responsible. There is no way to escape the conclusion that this all-or-nothing approach is

analytically inconsistent with the comparative fault doctrine recently adopted by this Court. *See McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn.1992). By contrast, the "loss of chance" doctrine spurned by the majority in this case is obviously analytically consistent with the allocation of damages based on comparative fault, regardless of whether the physician's negligence is pegged above or below 50 percent in terms of proximate causation.

The courts in the 30 or more jurisdictions that have recognized the "loss of chance" doctrine or permitted recovery for "increased risk of harm" certainly cannot be accused of doing so with the intent to dismantle the law of proximate cause in medical malpractice cases. They have, instead, recognized the reality of medical practice and the difficulty of predicting with any scientific certainty which patients with a life-threatening disease will survive and which will not. Without a crystal ball to guide them, medical experts must fall back on statistics, on percentages, and on five-year and ten-year survival rates.

Moreover, it is no coincidence that most of the major "loss of chance" cases involve cancer, a disease which, 100 years ago, left no survivors. In America today, perhaps half of all cancer patients survive, depending on the type and location of the disease and—significantly—on its earliest possible detection and treatment. Indeed, insurance industry figures show that failure to make a timely diagnosis of cancer was the second most frequent reason why doctors were sued nationwide, in 1990 and 1991.[7] Public health educators emphasize that early detection is the key to curing cancer, especially in breast cancer cases such as Sandra Kilpatrick's. A rule that bars her from any hope of legal recourse for alleged malpractice in the failure to diagnose her cancer before it metastasized would put Tennessee seriously out of step with recent legal developments in this country and with sound public health policy.

Emphasis on early detection of cancer will undoubtedly intensify as methods of early detection improve. Eventually, the level of technology may progress to the point that the amount of litigation for failure to diagnose cancer will decrease in an inverse ratio to it. Until then, however, a patient with a pre-existing medical condition that has been exacerbated by negligence on the part of the diagnostician should be able to recover for the very real injury that has occurred. The key is proper definition of the injury, not as the patient's ultimate condition (which is, after all, caused in fact by the cancer and not by action of the treating physician), but in terms of those damages directly attributable to the diagnostician's negligence, including shortened life expectancy and the fear and anxiety that accompany it. In failing to make this simple distinction, the majority in this case has clearly moved Tennessee back a step and not forward.

ANDERSON, Justice, concurring and dissenting opinion.

I agree with the unanimous conclusion of all opinions that the plaintiffs are entitled to recover damages for bodily injury, including pain and suffering, disability, medical expenses, loss of earning capacity and loss of consortium, and to that extent the summary judgment in favor of the defendant should be reversed. I also agree with the basic rationale of Justice Daughtrey's dissenting opinion that the plaintiff should be able to recover for the injury of loss of chance if the proof establishes that the injury was proximately caused by the defendant's negligence in accordance with traditional tort principles of causation. I would, however, limit recovery for the injury to a substantial loss of chance, which I would define as at least 20 percent, and I would confine application of the principle to medical malpractice actions. *See e.g. Roberson v. Counselman*, 235 Kan. 1006, 686 P.2d 149 (1984); *Falcon v. Memorial Hosp.*, 436 Mich. 443, 462 N.W.2d 44 (1990); *McKellips v. Saint Francis Hosp.*, 741 P.2d 467 (Okla.1987); *Perez v. Las Vegas Medical Center*, 107 Nev. 1, 805 P.2d 589 (1991).

---

7. Rosenblum, *Malpractice Solutions* (Whittle Direct Books, 1993), at 62. The statistics are taken from claims filed in a two-year period with St. Paul Fire and Marine Insurance Co., the nation's largest private medical liability insurer.