IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION AT KNOXVILLE

FILED

November 3, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| CODY GLASNER, a minor, by | ) | HAMILTON CIRCUIT |
| next friend and parents, DERYL and | ) | |
| POLLY GLASNER, and DERYL | ) | NO. 03A01-9612-CV-00401 |
| and POLLY GLASNER, | ) | |
| Individually, | ) | |
| | ) | |
| Plaintiffs/Appellees | ) | HON. ROBERT M. SUMMITT |
| | ) | JUDGE |
| v. | ) | |
| | ) | |
| JOHN HOWICK, M.D.; HUMANA | ) | |
| OF TENNESSEE, INC.; | ) | |
| JOHN A. SHULL, M.D.; | ) | |
| JANE L. ROHRER, M.D.; and | ) | |
| WILLIAM D. CRAWLEY, M.D., | ) | |
| | ) | REVERSED and |
| Defendants/Appellants | ) | DISMISSED |

Richard A. Smith and Heidi H. Andry, Chattanooga, Attorneys for Appellant
John Howick, M.D.

E. Blake Moore, Chattanooga, Attorney for Appellant Humana of Tennessee,
Inc.

Arthur P. Brock, Chattanooga, Attorney for Appellant Jane L. Rohrer, M.D.

David E. Harrison and Tonya K. McIntosh, Chattanooga, Attorneys for
Appellant William D. Crawley, M.D.

H. Franklin Chancey, Cleveland, Attorneys for Appellees.


**O P I N I O N**

INMAN, Senior Judge

This is a medical malpractice action brought by Deryl and Polly Glasner

individually and as parents and next friend of Cody Glasner, who was born

October 6, 1991.[1]

As winnowed by pleadings, the surviving claim is on behalf of Cody,

---

[1] Cody died in 1994.

who was born brain dead.[2] His resuscitation is alleged to have been contrary to the prevailing standard of care in this jurisdiction, since he had no reasonable prospect for a qualitative life.

**I**

The facts are not materially controverted and may be fairly summarized thusly:

On October 6, 1991 Mrs. Polly Glasner was in the 37th week of a pregnancy with twins. About 5:30 a.m. her membranes spontaneously ruptured and she called the answering service of her obstetrician, Dr. John Shull. Dr. Jane Rohrer was filling in for Dr. Shull and she returned Mrs. Glasner's call. Dr. Rohrer instructed Mrs. Glasner to go to East Ridge Hospital but gave her permission to shower first. While she was in the shower, she felt something between her legs. Her husband told her that it appeared to be an umbilical cord protruding from her vagina.[3] Mrs. Glasner called Dr. Shull's answering service again and informed them of the prolapsed cord. She and her husband immediately left for East Ridge Hospital.

Dr. Crawley, an obstetrician, was at home the morning of October 6, 1991, when he was called by a nurse at East Ridge who told him that one of Dr. Shull's patients was on her way to East Ridge and that she possibly had a prolapsed umbilical cord. The nurse asked Dr. Crawley to come to East Ridge, and he did so, arriving some six to ten minutes after the phone call. Mrs. Glasner was admitted to the hospital at 6:25 a.m. According to the medical records, no pulse was detected in the prolapsed cord, and no heartbeat was detectable by Doppler ultrasound. At the request of East Ridge nurses, Dr.

---

[2] The parents of Cody conceded that their individual claims were time-barred.

[3] This condition is known as a prolapsed cord.

2

Crawley examined Mrs. Glasner and confirmed that she had a prolapsed umbilical cord. She was immediately taken to a delivery room for an emergency caesarean section.

Dr. Rohrer performed an emergency caesarean section and delivered Cody at 6:35 a.m. with Dr. Crawley serving as the surgical assistant. Cody had no detectable heartbeat. As the surgical assistant, Dr. Crawley made no decisions relating to the care or treatment of either infant, but he worked with the surgeon to close the incision after the babies were delivered. Dr. Crawley did not participate in the resuscitation efforts.

Cindy Michaluk was the neonatal nurse practitioner on duty at East Ridge Hospital on the morning of October 6, 1991. She had been a registered nurse since 1978 with additional training as a neonatal nurse practitioner in 1980 and 1981. As such, her duties included caring for infants in neonatal intensive care units (NICU's) and performing delivery room resuscitations of newborns. Nurse Michaluk testified that in her career as a neonatal nurse practitioner she had seen patients with prolapsed cords three to four times per year.

She testified that at 6:00 a.m. on October 6, 1991, she received a telephone call advising her that a woman who was 37 weeks pregnant with twins and who had a prolapsed umbilical cord was coming into the hospital. She immediately began to assemble a team to prepare for the resuscitation of the infants. Before Mrs. Glasner arrived, nurse Michaluk telephoned Dr. John Howick, a neonatologist and director of the NICU at East Ridge. Dr. Howick was at home on Lookout Mountain when he received the call. Nurse Michaluk informed him about Mrs. Glasner's situation and stated what she planned to do. Because she did not think that Dr. Howick could arrive at the hospital prior to the delivery, Nurse Michaluk asked him to remain by the phone where she

could reach him, if necessary. Dr. Howick testified that the situation was one which a nurse practitioner was trained to handle.

After she delivered Cody, Dr. Rohrer handed the infant to nurse Michaluk. Nurse Michaluk and the other team members immediately began resuscitation procedures, which were successful. At 6:55 a.m., Cody was admitted to the NICU of East Ridge and placed on a ventilator. The other twin, Cory, was delivered without difficulty.

The plaintiffs allege that because of asphyxia before his birth, Cody sustained severe and irreparable brain damage, which caused other physical complications: inability to move, blindness, deafness, inability to swallow, and orthopedic problems attributable to inadequate placental support for more than 40 minutes prior to birth and, therefore, that the defendants were negligent either in performing or allowing the resuscitation of Cody.

## II

The plaintiffs allege that Dr. Shull, an obstetrician, was negligent (1) in failing to hospitalize Polly Glasner no later than October 3, 1991, (2) in failing to deliver the twins on October 3, 1991, and (3) in failing to take action to avoid the prolapsed cord.

Dr. Rohrer, an obstetrician, is alleged to have negligently failed to pronounce Cody stillborn, thus 'negating the need for further intervention.'

The plaintiffs allege that Dr. Howick was director of the NICU of East Ridge, and that he gave instructions by telephone to the delivery room nurse during the resuscitation efforts. He is alleged to have violated the standard of care by failing to inform the plaintiffs of the brain damage suffered by Cody and by failing to obtain their informed consent to continue resuscitation efforts.

Humana of Tennessee, Inc., is alleged to have been negligent in failing to

have a neonatologist present when Polly Glasner arrived at the hospital and, as the employer of nurse Michaluk, to have been responsible for her negligence in "making a serious medical decision to intervene with medical measures for an infant who had a history of being without adequate placental support for over 30 minutes."

The plaintiffs allege that Dr. Crawley, an obstetrician, failed to meet the required standard of care by not pronouncing Cody as stillborn and "therefore negating the need for further intervention."

The defendants filed their answers in course. Each defendant denied any individual negligence or malpractice and generally asserted that all of Cody's injuries were sustained prior to his birth for reasons not attributable to any act of commission or any omission of any defendant, and each alleged that the complaint failed to state an actionable cause of action.

### III

The motions of Drs. Howick, Crawley and Rohrer, and the motion of Humana of Tennessee, Inc., for summary judgment were denied, and these defendants[4] applications for an interlocutory appeal pursuant to RULE 9, TENN. R. APP. P., were granted by order entered January 7, 1997.

The *designated* issue on appeal is:

Does Tennessee recognize a cause of action for the successful resuscitation and treatment of an infant born in distress where the resuscitation and subsequent treatment caused no injury, but merely resulted in the survival of an infant with injuries sustained prior to birth?

We do not reach this precise issue, since in our judgment the plaintiffs

---

[4]Dr. Shull is not a party to this interlocutory appeal.

failed to offer competent countervailing evidence to the supported motions of the defendants for summary judgment.

**IV**

Our review is *de novo* on the record, RULE 13(D), TENN. R. CIV. P.; *Goodman v. Memphis Park Com'n.,* 851 S.W.2d 165 (Tenn. App. 1992). The issue is one of law, with no presumption of correctness of the decision of the trial court. *Bain v. Wells,* 936 S.W.2d 618 (Tenn. 1997); *Byrd v. Hall,* 847 S.W.2d 708 (Tenn. 1993); RULE 56.03, TENN. R. CIV. P.

**V.**

This is not an action for wrongful death. It is, in effect, one for 'wrongful life,' since the thrust of the plaintiff's lawsuit is directed to the fact that Cody was stillborn and that the appealing defendants committed medical malpractice in resuscitating him.

Dr. Howick was director of the neonatal unit of the hospital. He was contacted as home by nurse Michaluk, to whom he gave instructions about the resuscitation of Cody. He arrived at the hospital two hours later. It is alleged that he should have informed the plaintiffs of Cody's condition, which would have given them the opportunity to direct the withholding of life-supporting measures.

By affidavit he testified that he was not at the hospital when Polly Glasner was admitted, was not present during the birth of her children, and was not involved in any of the actions to resuscitate Cody.

It is not controverted that the individuals who resuscitated Cody were employees of East Ridge Hospital (Humana) and were not agents of Dr. Howick, who was not an employee of the hospital.

6

The plaintiffs allege that Dr. Crawley and Dr. Rohrer, obstetricians, failed to exercise an acceptable standard of care by not pronouncing Cody as stillborn, which "would have negated further intervention."

Dr. Crawley testified that he was called by a nurse at East Ridge Hospital who informed him that one of Dr. Shull's obstetrical patients was en route to the hospital with a prolapsed umbilical cord. He testified that within six to ten minutes he arrived at the hospital, examined Mrs. Glasner, and confirmed that the cord was prolapsed. He was asked to assist Dr. Rohrer, who performed an emergency cesarean section, and testified that he made no decisions relating to the care and treatment of Cody, and that his actions were in conformity with acceptable medical standards prevailing in Chattanooga.

Dr. Rohrer testified that she delivered Cody and handed him to a nurse for resuscitation, and that all of her actions were in accordance with acceptable and prevailing standards of care.

### Humana of Tennessee, Inc.

An employee of the hospital, nurse Michaluk, was alleged to have negligently "made a serious medical decision to intervene with medical measures for an infant who had a history of being without adequate placental support for over 30 minutes."

In her affidavit filed in support of the motion of the hospital for summary judgment, she broached the issue straightforwardly.

After testifying that the care and treatment rendered to Cody at the hospital was at all times within the standard of professional practice, she testified that:

> "The alternative to the care given would have been to have intentionally allowed Cody Glasner to die."

The plaintiffs responded to the motions for summary judgment by filing

7

the affidavits of Dr. Dan Levin and Dr. George Peckham.

Dr. Levin testified that he is a licensed physician in Texas and Professor of Clinical Pediatrics at the University of Texas Southwestern Medical School. As such, he testified that he was familiar with the standard of care applicable to obstetricians, neonatologists and hospital nurses in Chattanooga, Tennessee.

He testified that Dr. Howick and Humana Hospital "failed to act with ordinary and reasonable care" in accordance with the recognized standards of care, and that the "obstetrician" [unnamed], as the only physician in attendance, was "negligent for not pronouncing the first infant [Cody] stillborn and 'therefore negating the need for further intervention,' " and that the nurse clinician was negligent in her intervention "*since the resuscitation of a dead person is not the standard of care in this country.*"

He further testified that "the attending neonatologist [Dr. Howick] was negligent because he was not present until two hours after the arrival of Mrs. Glasner to the hospital. His professional input and decision-making was key to the appropriate care of this infant and without his involvement the standards of care were not met."

Dr. Peckham testified that he was a licensed physician in Pennsylvania and board-certified in pediatrics and neonatal-perinatal medicine. He testified that he was familiar with the recognized standard of care applicable to obstetricians and neonatologists in Chattanooga and that the "defendants, [Drs. Howick and Humana of Tennessee] failed to act with ordinary and reasonable care in accordance with the recognized standards of acceptable professional practice." His affidavit echoes that of Dr. Levin and contains similar language. Both Dr. Levin and Dr. Peckham testified that "the staff of the neonatology

service" never offered to the family the "likely prospect" that Cody was brain dead and that "not to discuss and offer the family the possibility of a 'Do Not Resuscitate' status is not compatible with medical and ethical standards."

## VI.

As we have seen, the allegations against Dr. Howick are directed (1) to his absence, (2) to his asserted failure to inform the plaintiffs of the brain damage sustained by Cody, and (3) to his failure to have in place protocols and procedures consistent with the standards for neonatal resuscitation.

It is conceded that the prolapsed umbilical cord, the lifeline of the baby, caused a reduction of oxygenated blood to Cody, with resultant brain damage. Both Dr. Levin and Dr. Peckham testified that at the time of Cody's birth, the damage had already occurred, and that he sustained no further brain damage during birth or after birth.

The affidavit of Dr. Peckham references only Dr. Howick and Humana of Tennessee, Inc.; the affidavit of Dr. Levin refers to an unnamed obstetrician whom we may fairly assume is Dr. Crawley. He opined that Dr. Crawley "was negligent for not pronouncing Cody stillborn and therefore negating the need for further intervention," since "the resuscitation of the dead is not the standard of care in this country."

## VII

T. C. A. 29-26-115 provides:

> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
>> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
>> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

9

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

(b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a) unless he was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case and had practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available.

The defendants filed motions to exclude the testimony of "the expert witnesses" which were denied in a single order. We may assume that these "expert witnesses" are Drs. Levin and Peckham. We may further assume that the ground for the motions is that these experts are residents of and practice in Texas and Pennsylvania, which are not "contiguous, bordering States." We further assume that the trial judge made no determination that "appropriate witnesses otherwise would not be available," and therefore did not waive the contiguity rule.

The record merely reflects that the motions to exclude the testimony were denied. This denial appears to be in direct defiance of the statute which prohibits the testimony of health care experts from non-contiguous states unless the prohibition is waived. *See, McCoy v. Mitchell,* 463 S.W.2d 710 (Tenn. 1970); *Pyle v. Morrison,* 716 S.W.2d 930 (Tenn. App. 1986); *Payne v. Caldwell,* 796 S.W.2d 142 (Tenn. 1990).

## VIII

The defendants do not present for review the issue of whether the court erred in failing to grant their motions to exclude the testimony of Drs. Levin and Peckham. Pursuant to RULE 13(b), T. R. A. P., we are authorized to

10

consider the issue, and consonant with the decisions in *McCoy, Pyle,* and *Payne, supra,* hold that the motions should have been granted.

## IX.

The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists, *Byrd v. Hall,* 847 S.W.2d 208, 211 (Tenn. 1993), and the trial court and the appellate court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* at 210-211. The phrase "genuine issue" as stated in RULE 65.03 refers to genuine, factual issues and does not include issues involving legal conclusions to be drawn from the facts. *Id.* at 211. In *Byrd,* the Court said:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.03 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for the trial. "If he does not so respond, summary judgment . . . shall be entered against him."

*Id.* (citations omitted). Summary judgment is only appropriate when the case can be decided on the legal issues alone. *Id.* at 210. Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Johnson v. EMPE, Inc.,* 837 S.W.2d 62, 68 (Tenn. App. 1992).

## X.

The exclusion of the affidavits of Drs. Levin and Peckham resolves the case against the appealing defendants because there is no countervailing evidence to their supported motions for summary judgment. *Byrd, supra.*

Assuming, arguendo, that the affidavits of Drs. Levin and Peckham may

properly be considered, their testimony is not sufficient to create a genuine issue of a material fact under RULE 56 because we are not disposed, at this juncture, to hold that 'resuscitation of the dead' is negligence within the purview of medical malpractice law.

It is well settled in Tennessee that when a defendant makes a properly supported motion for summary judgment, the plaintiff must present admissible evidence that makes out at least one disputed material fact with respect to the matter controverted by the defendant.  If the plaintiff fails to do so, the claim of that party must fail.  *Kilpatrick v. Bryant,* 868 S.W.2d 594 (Tenn. 1993).  In the instant case, the plaintiffs, when confronted with the defendants' properly supported motions, were obligated to demonstrate that the *negligence* of one or more of the defendants more likely than not caused a legally cognizable injury.  Significantly, the plaintiffs in this case do not allege that any act of the defendants *caused* Cody's very severe injuries; rather they attempt to transmute life-saving actions into affirmative acts of negligence which revived "a nonquality life."

## XI.

The motions for summary judgment are granted and the case against the defendants Howick, Rohrer, Crawley and Humana of Tennessee, Inc., is dismissed at the costs of the appellees.

_____
William H. Inman, Senior Judge

CONCUR:


_____
Herschel P. Franks, Judge

_____
Charles D. Susano, Jr., Judge