IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 3, 2017

## WILLIAM COOK, II v. STATE OF TENNESSEE

Appeal from the Tennessee Claims Commission
No. T20120644   James A. Hamilton, III, Commissioner

_____

### No. W2016-01914-COA-R3-CV

_____

The claimant initiated this action by filing a complaint in the Tennessee Claims Commission to recover damages for personal injuries from the State of Tennessee resulting from an attack by another inmate at West Tennessee State Penitentiary. Following discovery, the State filed a motion for summary judgment on the ground that the undisputed material facts established the assault was not reasonably foreseeable; therefore, the claimant could not prove proximate cause, which is an essential element of a negligence claim. The trial court agreed and summarily dismissed the complaint. This appeal followed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission
Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, and BRANDON O. GIBSON, JJ., joined.

Matthew C. Edwards, Bolivar, Tennessee, for the appellant, William Cook, II.

Herbert H. Slatery III, Attorney General and Reporter, Andree Blumstein, Solicitor General, and Pamela S. Lorch, Senior Counsel, Office of the Attorney General, Nashville Tennessee, for the appellee, State of Tennessee.

### OPINION

Claimant, William Cook, II, ("Cook") was attacked and stabbed by his cellmate, Chad Morrison ("Morrison"), on December 6, 2010, while both were serving as inmates at West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee. Morrison used a "shank," or a handmade knife, in the assault and Cook sustained severe injuries as a result.

In Cook's complaint filed with the Tennessee Claims Commission on March 23, 2012, he contended the State was liable because Morrison's attack on him was reasonably foreseeable. Cook alleged that the State was on notice of and aware of Morrison's dangerous propensity through:

> various incidents such as previously making a "shank" or knife in the prison shop and trying to conceal it and previously reported dangerous activity such as threatening a correctional officer. In spite of the fact of knowing Morrison's dangerous propensity and previously reported dangerous activity, Defendant took no action to guard Claimant against or protect Claimant from Morrison nor did Defendant alert or notify Claimant of Morrison's dangerous propensity or Morrison's dangerous activity….

The State answered the complaint by denying all assertions that the assault was foreseeable and that prison authorities had any reason to anticipate Morrison's attack on Cook. The parties proceeded with discovery and ascertained the relevant facts summarized below.

Cook was remanded to the custody of the Tennessee Department of Correction (TDOC) following his fourth DUI conviction, and he was transferred to WTSP in October 2010 to serve his sentence. After completing the security assessment process, WTSP determined that Cook required minimum security, which is the lowest level of security.

Morrison had been incarcerated at WTSP since March 24, 2010. Prior to his transfer to WTSP, Morrison was housed at the Sullivan County Jail. During his confinement there, Sullivan County Jail officials conducted a security assessment for Morrison and found no record of previously resolved or pending violent charges, nor did they consider or suspect that Morrison belonged to a security threat group. After undergoing the classification process at WTSP, WTSP determined that Morrison required minimum security.

Cook and Morrison became cellmates at WTSP on October 21 or October 22, 2010. Morrison assaulted Cook on December 6, 2010. Prior to the assault, Cook and Morrison had a good relationship, and Cook admitted that Morrison never threatened him.

After taking discovery, the State filed its motion for summary judgment contending the assault was not foreseeable. More specifically, the State insisted that Cook could not establish the essential elements of negligence, particularly proximate cause; therefore, the State was entitled to summary judgment as a matter of law. The State supported its motion with a statement of undisputed facts, which included the following:

- 2 -

1. Cook's cellmate at WTSP, Morrison, was transferred from the local jail to WTSP on March 24, 2010.
2. In the Classification Custody Assessment Form, Morrison scored minimum security.
3. Minimum security is the lowest level of security.
4. Morrison had no history of institutional violence and no prior assaultive-offense history.
5. The local jail, Sullivan County Jail, also did an assessment on March 24, 2010 and noted that Morrison had no record of any previously resolved or pending violent charges and was not a suspected or a confirmed member of a security threat group.
6. Cook became Morrison's cellmate on October 21 or October 22, 2010.
7. Prior to December 6, 2010, Cook had no problems with Morrison and reported no problems to the prison authorities.
8. Inmates Cook and Morrison never fought.
9. Cook did not feel at all threatened by Morrison.
10. On December 6, 2010, inmate Morrison stabbed Cook.
11. Morrison claimed he stabbed Cook because Cook tried to rape him.

Cook filed a response to the motion for summary judgment supported by a statement of disputed material facts. Cook contended that the State had ample notice that Morrison posed a threat to Cook and to all inmates and staff. He based this assertion on the fact that an instructor at the prison caught Morrison taking a piece of steel from the prison school. He also contended that a prison staff member found Morrison in possession of a knife. As a consequence of the theft from the prison school, WTSP removed Morrison from the school program, identified him as a potential security threat, and issued a non-disciplinary job drop. Prison officials did not issue a disciplinary report for the knife incident.

In response, the State insisted that Cook relied on "irrelevant and immaterial" facts and contended that the incidents were "too remote and too generalized" to create a genuine issue of material fact.

The Commissioner granted the State's motion for summary judgment. In its ruling, the Commissioner found that Cook admitted to the following in his response to the State's statement of undisputed facts:

1. Cook became Morrison's cellmate on October 21 or 22, 2010.
2. Prior to December 6, 2010, Cook had no problems with Morrison and reported no problems to the prison authorities.
3. Inmates Cook and Morrison never fought.
4. Cook did not feel at all threatened by Morrison.

The Commissioner noted that when questioned during his deposition as to whether Morrison posed a threat to him, Cook testified as follows:

> Q. So you didn't feel that Mr. Morrison was a threat to you.
> A. None whatsoever.

The Commissioner found:

> It is undisputed that during the time Claimant and Chad Morrison were cellmates William Cook never complained to correction officials at WTSP concerning Chad Morrison; Mr. Cook never told correction officials Mr. Morrison posed threat to him; Mr. Cook never requested that he be transferred away from Mr. Morrison and Mr. Morrison had never exhibited violent or threatening behavior toward Claimant. Prior to December 6, 2010, Claimant thought Mr. Morrison posed no threat to him — "none whatsoever."

Having determined that the material facts were not in dispute and that Cook could not establish the essential element of proximate cause, the Commissioner granted the State's motion for summary judgment. This appeal followed.

## ISSUE

Cook contends the Claims Commissioner erred by granting summary judgment because material facts are in dispute concerning whether the State knew of or had reason to anticipate an attack by Morrison and did not use reasonable care to prevent it.

## STANDARD OF REVIEW

This court reviews the granting of a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for

summary judgment does not bear the burden of proof at trial, it may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264 (emphasis in original).

When a motion for summary judgment is made and supported as provided in Tenn. R. Civ. P. 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* Instead, the nonmoving party must respond with specific facts showing that there is a genuine issue for trial. *Id*. A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

When a defendant moves for summary judgment based on an affirmative defense, the defendant must establish the elements of the affirmative defense before the burden shifts to the nonmovant. *See Carr v. Borchers*, 815 S.W.2d 528, 532 (Tenn. Ct. App. 1991). If the moving party makes a properly-supported motion, the burden shifts to the nonmoving party to "set forth specific facts at the summary judgment stage showing that there is a genuine issue for trial." *Rye*, 477 S.W.3d at 265. A disputed fact is "material" if it "must be decided in order to resolve the claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id*.

## ANALYSIS

The issue of the liability of the State, a county, or a municipality arising from inmate-on-inmate assaults in penal institutions is not new to this state. *Harvey v. Dickson Cty.*, No. M2007-01793-COA-R3-CV, 2008 WL 2165958, at *2 (Tenn. Ct. App. May 21, 2008). Our courts have repeatedly noted that penal institutions are not insurers of an inmate's safety. *Id*. (citing *Gillespie v. Metropolitan Government*, No. 01A01-9109-CV-00317, 1992 WL 9441, at *1 (Tenn. Ct. App. Jan. 24, 1992)). The general rule is that the penal institutions merely have a duty to use reasonable and ordinary care to prevent foreseeable attacks on inmates by other inmates. *Id*. A penal institution breaches its duty of care when "the institution's authorities knew of or had reason to anticipate an attack and did not use reasonable care to prevent it." *King v. Anderson County*, 419 S.W.3d 232, 248 (Tenn. 2013) (quoting *Gillespie*, 1992 WL 9441, at *1).

Cook alleges that the authorities at WTSP acted negligently in the supervision of Morrison due to the custodial classification of Morrison as a minimum security risk. On appeal, the primary focus of both parties has been on the issue of foreseeability in the context of the proximate cause test. Accordingly, we will address the same factor.

Proximate cause focuses upon "whether the policy of the law will extend responsibility for that negligent conduct to the consequences that have occurred." *Id.* at 246 (quoting *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993)). "Proximate cause puts a limit on the causal chain, such that, even though the plaintiff's injury would not have happened but for the defendants' breach, defendants will not be held liable for injuries that were not substantially caused by their conduct or were not reasonably foreseeable results of their conduct." *Id*. at 246-47 (quoting *Hale v. Ostrow*, 166 S.W.3d 713, 719 (Tenn. 2005)).

Tennessee courts use a three-pronged test to assess proximate cause:

1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and 2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and 3) *the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence*.

*McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991) (emphasis added).

The third element in the proximate cause analysis is foreseeability, and here, the primary focus of the parties has been the issue of foreseeability.

Foreseeability is [a] crucial factor in the proximate cause test because, if the injury that gives rise to a negligence case could not have been reasonably foreseen, there is no proximate cause and thus no liability despite the existence of negligent conduct. "A risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable." However, "[t]he plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility." Foreseeability must be determined as of the time of the acts or omissions claimed to be negligent.

*King*, 419 S.W.3d at 248 (internal citations omitted).

As noted earlier, in the context of an inmate-on-inmate assault, an assault is foreseeable only if "the institution's authorities knew of or had reason to anticipate an attack and did not use reasonable care to prevent it." *Id*. (citing *Gillespie*, 1992 WL 9441, at *1).

[T]o establish the proximate causation necessary to prevail in a negligence action against a penal institution for an inmate-on-inmate assault, the

- 6 -

institution must have "had prior notice of an attack." *Id. See* e.g. *Harvey*, 2008 WL 2165958, at \*1; *Kinningham*, 2001 WL 1089501, at \*2; *Hanks*, 1999 WL 454459, at \*3; *see also Saunders*, 446 A.2d at 751 (holding that the prior notice rule is, in effect, a more specific application of the general rule of foreseeability, requiring, for example, knowledge that an inmate's dangerous propensities were likely to lead to an attack on a specific victim or group of victims).

For purposes of assessing a penal institution's liability, prior notice can be actual or constructive. Such notice may arise from knowledge of specific threats to a specific inmate or group of inmates from another individual or group of individuals, or an inmate's prior institutional history of violent—including self-destructive or suicidal—behavior, or any other specific information or conditions that would provide prison officials with actual or constructive notice of foreseeable harm to specific individuals or groups of persons.

*Id*. at 248-49.

Tennessee courts have consistently held that where a governmental entity had no prior notice of an inmate-on-inmate attack, it cannot be liable for an assault. *Id*. at 249. Here, there is no evidence that the State or any authorities at WTSP knew of or had reason to anticipate an attack by Morrison, because he had no record of institutional violence and had been classified for custodial purposes as a minimum security risk. It is also undisputed that Cook spent more than six weeks in the same cell with Morrison without incident, conflict, or concern and Cook never complained to prison authorities that he felt threatened by Morrison in any fashion. Furthermore, in his deposition Cook admitted that he never felt threatened by Morrison. As Cook succinctly explained it, Morrison posed no threat to him, "none whatsoever."

The foregoing notwithstanding, although Cook admits that while he had no reason to anticipate an attack on him by Morrison, he contends the State did. Cook relies on the fact that Morrison was caught attempting to remove a piece of steel from the prison school and that Morrison was previously caught in possession of a knife. The State argues that this occurrence is not relevant because Morrison was caught, and thus, he was not able to remove the piece of steel from the school. The State also argues that there was no evidence that Morrison intended to make a weapon with it. As for having possessed a knife at some point in his penal career, the State finds it significant that there is no proof when that occurred, noting it may have been a long time ago. Moreover, the State remarks that the knife was also confiscated, and there was no evidence that Morrison ever used any weapon to assault an inmate or a prison guard prior to the assault on December 6, 2010. In summation, the State insists this evidence is "too remote and too generalized" to create a genuine issue of material fact.

A finding that the assault was a reasonably foreseeable probability is the standard for assessing proximate cause, which is necessary to impose liability in a negligence case. *Id*. at 250. Cook failed to provide evidence to support a finding of foreseeability or to even create a dispute of fact concerning the issue of foreseeability. As a consequence, he cannot prove the essential element of proximate cause.

For the foregoing reasons, we affirm the Claims Commission's decision to grant summary judgment in favor of the State.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, William Cook, II.

_____
FRANK G. CLEMENT JR., P.J., M.S.