IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 28, 2017 Session

## JORDAN FRANKLIN-MANSUO, ET AL. v. AMISUB (SFH), INC. D/B/A SAINT FRANCIS HOSPITAL, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-004266-13     Rhynette N. Hurd, Judge**

_____

### No. W2016-01623-COA-R3-CV

_____

This is a health care liability case. Appellant filed suit against Appellee, a medical doctor, alleging that Appellee's supervision of a physician assistant fell below the standard of care, which resulted in the injury and death of Appellant's mother. Appellee moved for summary judgment on the basis that Appellant had not provided competent expert testimony regarding the applicable standard of care or a causal link between Appellee's actions and the subsequent injury and death of the patient at issue. The trial court granted Appellee's motion due to Appellant's lack of expert testimony to satisfy the requirements of Tennessee Code Annotated section 29-26-115. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Jonathan Mark Benfield and Martha C. Burgett, Memphis, Tennessee, for the appellant, Jordan Franklin-Mansuo.

Marty R. Phillips, Jackson, Tennessee, and John O. Alexander, IV, Memphis, Tennessee, for the appellee, Muhammad Abushaer, M.D.

### OPINION

### I. FACTS & PROCEDURAL HISTORY

At approximately 12:30 p.m. on June 10, 2012, Suzi Franklin presented to the

emergency department at Saint Francis Hospital complaining of a sore throat, difficulty breathing, a cough, and difficulty swallowing. While in the emergency department, Ms. Franklin was treated by Preston Embrey, a physician assistant. Dr. Muhammad Abushaer was Mr. Embrey's supervising physician in the emergency department that day. In an attempt to determine the nature of Ms. Franklin's condition, Mr. Embrey ordered a CT scan of Ms. Franklin's neck. After receiving the results of Ms. Franklin's CT scan, Mr. Embrey accurately diagnosed Ms. Franklin with epiglottitis, which is the inflammation of the epiglottis and structures above the vocal cords.

Mr. Embrey consulted with an ear, nose, and throat physician, Dr. Mark Clemons, at approximately 4:20 p.m. regarding Ms. Franklin's epiglottitis diagnosis. Dr. Clemons advised that Ms. Franklin needed to be admitted to the ICU. In his deposition, Mr. Embrey testified that, based on his telephone conversation with Dr. Clemons, he believed that Dr. Clemons was going to come to the hospital to admit Ms. Franklin to the ICU. According to Dr. Clemons, he was not asked to be Ms. Franklin's physician, and he never agreed to admit Ms. Franklin to the ICU. At any rate, Dr. Clemons did not come to the hospital to treat Ms. Franklin while she was in the emergency department or to admit her to the ICU.

While waiting for Dr. Clemons to arrive, Mr. Embrey testified that he kept Ms. Franklin under constant observation. Around 7:00 that evening, when Dr. Clemons had still not arrived, another doctor at the hospital, Dr. Kelinda Ramsay, admitted Ms. Franklin to the ICU. Shortly after Ms. Franklin left the emergency department, Ms. Franklin lost her airway and suffered a significant hypoxic event. The record is not clear regarding whether she was in the process of being transported to the ICU or if she had already arrived when she suddenly lost her airway. Ms. Franklin remained in the hospital and ultimately died ten days later on June 22, 2012. Appellant asserts that brain damage resulting from Ms. Franklin's hypoxic event on June 10, 2012 led to her death. However, the cause of death listed on Suzi Franklin's death certificate is "acute cerebrovascular accident.[1]"

Jordan Franklin-Mansuo[2] ("Appellant") filed the instant lawsuit on behalf of himself, the estate of Suzi Franklin, and "all wrongful death beneficiaries" on October 2, 2013. Appellant named AMISUB (SFH), Inc. d/b/a/ Saint Francis Hospital, physician assistant Preston Embrey, Dr. Mark Clemons, Dr. Muhammad Abushaer, and Dr. Kelinda Ramsay, as defendants. In the complaint, Appellant alleged that the defendants' "failure to properly treat, evaluate, and monitor Suzi Franklin on June 10, 2012 [caused her] to suffer a severe brain injury on June 10, 2012 and die[] on June 22, 2012."

---

[1]An acute cerebrovascular accident is also known as a stroke.
[2]Jordan Franklin-Mansuo is the son of Suzi Franklin and the administrator of her estate.

2

In his expert disclosures, Appellant identified Dr. Douglas Holmes and Dr. Sandy Craig as experts on the standard of care required by the medical professionals in this case and how their alleged deviations from that standard of care caused the death of Ms. Franklin. Appellant further identified Dr. Alfred Callahan to testify regarding causation.

Following Appellant's expert disclosures, Dr. Abushaer filed a motion for summary judgment asserting that Appellant's claims against him must be dismissed because Appellant had not presented competent expert proof against Dr. Abushaer as required by Tennessee Code Annotated section 29-26-115(a). Specifically, Dr. Abushaer averred that Dr. Holmes and Dr. Craig were not qualified to testify as to the standard of care applicable to him under the circumstances of this case and that there had been no expert testimony that causally linked any of Appellant's claims against Dr. Abushaer to Suzi Franklin's injuries and death.

Dr. Abushaer's motion for summary judgment was heard by the trial court on June 16, 2016. At the conclusion of the hearing, the trial court issued an oral ruling granting Dr. Abushaer's motion for summary judgment. The court held that Dr. Craig and Dr. Holmes were not competent to testify as to the standard of care relative to Dr. Abushaer as required by Tennessee Code Annotated section 29-26-115(b). Regarding causation, the trial court found that Appellant's attorney had conceded that Dr. Craig was not an expert on causation, and that, after reviewing Dr. Holmes' deposition, the court found Dr. Holmes' testimony too attenuated and speculative to suffice under Tennessee law. On July 11, 2016, the trial court entered an order granting Dr. Abushaer's motion for summary judgment. In part, the trial court held:

> After considering the motion, the record in this case to include the depositions of Plaintiff's experts, and oral argument from counsel in open court, the Court grants Dr. Abushaer's Motion for Summary Judgment . . . .
>
> Specifically, the Court finds that neither Dr. Craig nor Dr. Holmes is competent under Tennessee Code Annotated § 29-26-115(b) . . . . The Court further finds that Plaintiff concedes that Dr. Craig is not a causation expert and that Dr. Holmes' causation testimony is attenuative and speculative, and therefore, does not meet the requirement under Tennessee law. As a result, the Court grants Dr. Abushaer's Motion for Summary Judgment because the Plaintiff has not presented sufficient evidence of a genuine issue of material fact as to the competency of Dr. Craig and Dr. Holmes, or even if they were competent, as to causation, and thus, these expert witnesses would not substantially assist the Court in determining liability and causation.

At the time the trial court entered its order dismissing Appellant's claims against Dr. Abushaer, Dr. Abushaer was the only defendant remaining in this case. During the course of the litigation, Appellant filed a notice of nonsuit of his claims against Dr. Ramsay, Mr. Embrey, and Saint Francis Hospital. Appellant settled his claims against Dr. Clemons, and he was dismissed as a defendant as well. Appellant then timely appealed the judgment of the trial court granting Dr. Abushaer's motion for summary judgment.

## II.    ISSUE PRESENTED

Plaintiff presents the following issue for review on appeal, which we have restated:

> Whether the trial court erred by granting summary judgment in favor of Defendant Dr. Muhammad Abushaer based on findings that Plaintiff had not presented competent expert proof establishing the recognized standard of care, that Dr. Abushaer failed to act within the standard of care, and that Dr. Abushaer's failure to act within the standard of care proximately caused Suzi Franklin's injuries and death?

## III.    STANDARD OF REVIEW

We review a trial court's ruling on a motion for summary judgment de novo without a presumption of correctness. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). When a motion for summary judgment is properly supported as provided in Tennessee Rule of Civil Procedure 56, in order to

> survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial."

4

*Id.* at 265 (emphasis in original). "Summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial." *Id.* (citing Tenn. R. Civ. P. 56.04, 56.06) (emphasis in original).

## IV. DISCUSSION

Although Appellant originally named several defendants in this matter, Dr. Abushaer's role as the supervising physician of Mr. Embrey on June 10, 2012 is the only subject of this appeal. In order to establish a prima facie case for health care liability, a plaintiff must present competent expert proof of the following:

> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a). In this case, we find the third element, which requires a plaintiff to prove a causal connection between the alleged medical negligence and the alleged injury, to be dispositive of Appellant's case against Dr. Abushaer.

The trial court held that the expert testimony proffered by Appellant regarding causation was too speculative and attenuated to satisfy his burden of proof under Tenn. Code Ann. § 29-26-115(a)(3). Appellant's theory of how Dr. Abushaer's actions (or inaction) proximately caused Suzi Franklin's injuries and death is best articulated in his response to the following statement of undisputed material fact alleged by Dr. Abushaer:

> [Dr. Abushaer]: Plaintiff's expert proof fails to establish causation against Dr. Abushaer.

> [Appellant]: Disputed. . . . Had Dr. Abushaer complied with the standard of care by lending his knowledge and expertise in treating Ms. Franklin and looking at Ms. Franklin's CT scan and/or radiologist report, Dr. Abushaer's

decisions regarding Ms. Franklin's care should have been different. Dr. Abushaer should have communicated to Dr. Clemons that a patient diagnosed with epiglottitis was in the emergency department, that there was a CT scan, that the CT scan showed significant swelling, and that the patient's airway was at risk. Dr. Abushaer should have advocated for Ms. Franklin by calling back Dr. Clemons or making alternative arrangements for Ms. Franklin's care since the amount of swelling shown in Ms. Franklin's CT scan was significant enough to require an ENT specialist to evaluate her within one hour. When a patient with epiglottitis has significant airway swelling, the standard of care requires prophylactic intubation or otherwise securing the patient's airway in the emergency department or the operating room before the patient is transported to the ICU. As a result of the failure to comply with this standard, the swelling of Ms. Franklin's epiglottitis increased to the point where she lost her airway. The loss of her airway led to a significant hypoxic event that caused severe brain damage and that brain injury led to her death. The loss of Ms. Franklin's airway was the proximate cause of her death.

In support of the above theory of causation, Appellant cites to specific portions of the deposition testimony of Drs. Craig, Holmes, and Callahan. As we noted previously, Appellant conceded at the hearing on the motion for summary judgment that Dr. Craig is not an expert on causation in this case. Appellant must therefore prove a causal link between his allegations of medical negligence against Dr. Abushaer and the injuries and death of Suzi Franklin through the testimony of Dr. Holmes and/or Dr. Callahan.

With regard to a plaintiff's burden of proving causation, the Tennessee Supreme Court has opined that:

> Causation, or cause in fact, means that the injury or harm would not have occurred "but for" the defendant's negligent conduct . . . . "[L]egal responsibility must be limited to those causes which are so closely connected with the result and are of such significance that the law is justified in imposing liability. Some boundary must be set . . . ." Fixing this boundary of liability is the purpose underlying the element of proximate cause.

*Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993) (Internal citations omitted). Testimony that is speculative or offers mere conjecture that will not substantially assist the trier of fact in determining causation is not an admissible expert opinion. *See* Tenn. R. Evid. 702.

When reviewing Dr. Holmes' deposition testimony in light of the foregoing standard, we conclude that Dr. Holmes' theory of causation contains too many contingencies to constitute competent expert testimony as to whether Dr. Abushaer's action or inaction was the proximate cause of Ms. Franklin's injuries and subsequent death. Dr. Holmes' theory is that Suzi Franklin would not have suffered injury and death but-for the actions of Dr. Abushaer. Dr. Abushaer was not asked to intervene in the care of or otherwise see Suzi Franklin while she was in the emergency department on June 10, 2012. Dr. Abushaer testified that he was available for consultation and additional medical treatment, including intubation, if it had been needed, but Suzi Franklin was clinically stable the entire time she was in the emergency department. According to Dr. Holmes, Dr. Abushaer should have known that there was a patient in the emergency department being treated for epiglottitis, ensured that Dr. Clemons arrived at the hospital to treat Ms. Franklin within a reasonable time after Mr. Embrey called him, and if Dr. Clemons did not arrive within a reasonable time, locate another ENT to treat Ms. Franklin in a way that would have prevented her sudden hypoxic event after leaving the emergency department.

We agree with the trial court that this theory of causation is too attenuated and speculative to form the basis of liability for Dr. Abushaer in his role as a supervising physician. Tennessee law requires a plaintiff to establish that it is more likely than not that the defendant's negligence caused plaintiff to suffer injuries that would not have otherwise occurred. *Kilpatrick*, 868 S.W.2d at 601-602. The "mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture or the probabilities are evenly balanced, it becomes the duty of the court to direct a verdict for the defendant . . . ." *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861 (Tenn. 1985)(citation omitted). Causation in a medical malpractice case must be shown to a reasonable degree of medical certainty. *Kilpatrick*, 868 S.W.2d at 601-602. Dr. Holmes' testimony as to causation does not establish, to a reasonable degree of medical certainty, that it is more likely than not that Ms. Franklin would not have suffered injury and death but-for the alleged negligent supervision by Dr. Abushaer. Dr. Holmes faults Dr. Abushaer for not ensuring that Dr. Clemons arrived to assess Ms. Franklin. However, Dr. Holmes was not able to say whether Dr. Clemons would have performed any particular procedure that would have prevented Ms. Franklin's hypoxic event. Even if Dr. Clemons had arrived and attempted to intubate Ms. Franklin, Dr. Holmes conceded that there are difficulties and risks associated with establishing an airway in a patient with epiglottitis. Also, according to Dr. Holmes, the determination of if, when, and what kind of procedure to perform would have been dependent on the medical conclusions of the ENT and anesthesiologist involved – not Dr. Abushaer. Dr. Holmes' testimony contains too many contingencies and is the equivalent of a domino theory of causation. Dr. Holmes' testimony did not establish, with a reasonable degree of medical certainty, that Dr. Abushaer's role as a supervising physician was, more likely

than not, the cause of Ms. Franklin's hypoxic event.

Appellant further alleges that the trial court erred in failing to consider the testimony of Dr. Callahan when finding that Appellant did not present expert testimony to establish causation. However, Dr. Callahan testified that he was only offering an opinion as to whether Ms. Franklin's hypoxic event caused brain damage that ultimately led to her death. Dr. Callahan made it clear during his deposition that he would not be testifying to the standard of care applicable in this case or whether any breach of that standard caused the hypoxic event itself. There is a link in the chain of causation in Appellant's case that can only be filled by the testimony of Dr. Holmes. Dr. Holmes is Appellant's only expert offered to prove that any of Dr. Abushaer's actions as a supervising physician led to Ms. Franklin's hypoxic event. And as we have opined herein, Dr. Holmes' testimony was too speculative to properly establish causation.

Because causation is an essential element of a health care liability claim pursuant to Tennessee Code Annotated section 29-26-115, we hold that Appellant's failure to proffer competent expert testimony linking his allegations of medical negligence against Dr. Abushaer to Suzi Franklin's injuries and death is dispositive in this case. To that end, Appellant's remaining issue regarding the competency of his expert witnesses is pretermitted, and we affirm the trial court's order granting summary judgment in favor of Dr. Abushaer.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court dismissing Appellant's claims against Dr. Abushaer. Costs of this appeal are taxed to the Appellant, Jordan Franklin-Mansuo, and his surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE